August CICATELLO and John Lomeo, on behalf of themselves and the entire class of persons similarly situated, and Albert Yaeger and Edward Przepasniak, on behalf of themselves and the entire class of persons similarly situated, Plaintiffs,

v.

BREWERY WORKERS PENSION FUND and Elmer R. Sidden, J. Lee Thynne, Enea Borra, Frank J. Fink, Valentine J. Frank, John Hoh, George Pfleiderer, Edward Siegmann, David Conroy and George L. Walsh, or their successors, as Trustees of the Brewery Workers Pension Fund, and New York State Teamsters Conference Pension and Retirement Fund, and Rocco De Perno, Stanley Clayton, William Moseley, Paul Bush, Victor Mousseau, Kapler Vincent, Lyle Dixon and Irving Wisch, as Trustees of the New York State Teamsters Conference Pension and Retirement Fund, Defendants.

No. Civ–77–16.

United States District Court, W. D. New York.

June 17, 1977.

952

Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N. Y. (Stuart M. Pohl and Stephen M. Mason, Buffalo, N. Y., of counsel), for plaintiffs.

Proskauer, Rose, Goetz & Mendelsohn (Bettina B. Plevan, New York City, of counsel), Sipser, Weinstock, Harper & Dorn, New York City (I. Philip Sipser, New York City), Ohlin, Damon, Morey, Sawyer & Moot, Buffalo, N. Y. (Richard E. Moot, Buffalo, N. Y., of counsel), for defendants Brewery Workers Pension Fund & Trustees of the Brewery Workers Pension Fund.

Paravati & Paravati, Utica, N. Y. (Peter P. Paravati, Utica, N. Y., of counsel), for defendants New York State Teamsters Conference Pension & Retirement Fund and Trustees of New York State Teamsters Conference Pension & Retirement Fund.

CURTIN, Chief Judge.

This case had its genesis in the 1973 agreement by the defendants, the New York State Teamsters Conference Pension and Retirement Fund [Teamsters Fund] and the Brewery Workers Pension Fund [Brewery Workers Fund], to merge the Brewery Workers Fund into the Teamsters Fund.

Subsequent to that agreement, the Teamsters Fund had second thoughts, apparently prompted in large measure by the difficulties encountered by Rheingold Breweries, a large New York brewery operation.[1] The Teamsters Fund notified the Brewery Workers Fund in February of 1974 that it would not proceed with the merger. Thereupon, the Brewery Workers Fund sued in State Supreme Court for specific performance of the contract.

The New York State Supreme Court, Queens County, granted the Brewery Workers summary judgment on April 29, 1975, and directed the Teamsters Fund to specifically perform the contract. That decision was unanimously upheld by the Appellate Division, Second Department. *Brewery Workers Pension Fund v. New York State Teamsters Conference Pension and Retirement Fund*, 49 A.D.2d 755, 374 N.Y.S.2d 590 (App.Div.2d Dept., 1975). Leave to appeal was denied by the Appellate Division on November 18, 1975, and by the Court of Appeals on February 11, 1976, 38 N.Y.2d 709, 382 N.Y.S.2d 1028, 346 N.E.2d 558 (1976).

The named plaintiffs and the class they purport to represent are employees and retired employees of trucking, brewing and allied industries whose employers are parties to collective bargaining agreements making contributions on behalf of these employees to the Teamsters Fund. The retired plaintiffs are receiving benefits under the fund and the plaintiffs who are presently employed will receive benefits under the fund upon their retirement.

These plaintiffs, claiming that they had no knowledge of any of the state proceedings just outlined, brought this action on January 11, 1977, seeking preliminary and permanent injunctive relief enjoining the merger of the two pension funds, declaratory relief declaring the merger invalid, and attorneys' fees. Jurisdiction is claimed under § 502 of the Employee Retirement Security Income Act of 1974 [ERISA], 29 U.S.C. § 1132, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

1. Rheingold ceased operations in early 1974. It was soon acquired by a new parent, Chock Full-O-Nuts Corp., and reopened on a reduced scale. The brewery was permanently closed in January 1976.

In their memorandum, the plaintiffs also discuss the problems of the F. & M. Schaeffer Brewing Corp., which reportedly shut down its New York operations shortly after the final closing of Rheingold in early 1976. Although the Schaeffer shutdown will no doubt have an effect on the merger, it was not a factor in the Teamsters Fund 1974 decision to renege on its 1973 decision to merge with the Brewery Workers Fund.

## I. JURISDICTION AND PLAINTIFFS' ALLEGATIONS

The Declaratory Judgment Act is not an independent grant of jurisdiction, *Warner-Jenkinson Co. v. Allied Chemical Corp.*, No. 76–7435, *slip op.* at 2875 (S.D. N.Y. Apr. 13, 1977); *Arthur v. Nyquist*, 415 F.Supp. 904, 909 n. 3 (W.D.N.Y.1976), so plaintiffs' claim must rest on the jurisdictional basis provided in ERISA. In addition, although plaintiff does not mention it in his papers, this court also has jurisdiction under 28 U.S.C. § 1331, since this action is brought under a federal statute and the amount in controversy exceeds $10,000.

Plaintiffs allege essentially five causes of action in their amended complaint. Briefly stated, they are that the defendants failed to comply with § 3001(a) of ERISA, 29 U.S.C. § 1201(a), by not notifying each employee of the Teamsters Fund of the proposed merger, that the merger violates § 208 of ERISA, 29 U.S.C. § 1058, because the benefits to the members of the plaintiffs' class under the merger are not equal to or greater than the benefits they would have been entitled to under the pre-merger Teamsters Fund plan, that the merger violates § 302 of ERISA, 29 U.S.C. § 1082, in that the merged fund will not meet the minimum funding standards set by ERISA, that the defendants have violated § 4043 of ERISA, 29 U.S.C. § 1343, which requires that certain "reportable events," such as this merger, be reported to the Pension Benefit Guarantee Corporation [PBGC], and that the merger is not in the best interests of the Teamsters Fund participants, and thus violative of that plan, because the Teamsters Fund would be assuming liabilities in excess of its assets.

In response, the defendant Brewery Workers Fund argues that the merger has already been completed, that the plaintiffs have not shown the proper grounds for preliminary injunctive relief, and that the plaintiffs' complaint should be dismissed for failure to state a claim upon which relief can be granted. The defendant Teamsters Fund, in its answering affidavit, merely states that it has opposed the merger of the two funds. It submits an affidavit of the Teamsters Fund administrator, which apparently was filed as an answer to the Brewery Workers' show cause order brought in January of 1977 in State Supreme Court to enforce the previous state court judgment, that supports the claims of the plaintiffs.

On March 22, 1977, the court heard oral argument from both the plaintiffs and the Brewery Workers Fund. The Teamsters Fund chose not to appear and to rely on its answering affidavit. At the oral argument, the Brewery Workers Fund dropped venue and jurisdictional objections it had raised in its answering papers.

## II. THE MERGER

The August 1973 agreement between the two funds provided that the merger would follow immediately upon ratification of the contract by the Brewery Workers' employees, which ratification occurred in late 1973, and upon approval of the merger by the Internal Revenue Service "under the applicable sections of the Internal Revenue Code for the purposes of tax deduction and exemption." (Agreement at Art. IX). The I.R.S. approval was subsequently granted in a letter dated September 28, 1976. After receiving the I.R.S. approval of the merger, the individual Brewery Workers Fund trustees resigned effective December 1, 1976, and transferred all assets and properties of the Brewery Workers Fund over to the Teamsters Fund effective December 1, 1976, by instrument dated November 19, 1976. The Teamsters Fund has, however, continued to refuse to comply with the contract and with the directives of the state court. The Teamsters Fund trustees did not accept the Brewery Workers Fund's assets, have not accepted Brewery Workers employees' contributions to the merged fund, and have not paid any benefits to Brewery Workers employees. It is the contention of the Teamsters Fund in this court that the merger is not yet a reality.

However, since this action was instituted, the Brewery Workers have obtained a State Supreme Court decision ruling that the merger was effective December 1, 1976 and

ordering the Teamsters Fund to accept the assets and property that the Brewery Workers' trustees assigned to them, to accept contributions from Brewery Workers' employers to the fund, to pay benefits due to Brewery Workers' employees, and to comply with other provisions of the contract. *Brewery Workers Pension Fund v. New York State Teamsters Conference Pension and Retirement Fund,* No. 9997/74 (Sup.Ct., Queens Co., March 28, 1977).

Plaintiffs allege that the Brewery Workers Fund has some $22 million in assets, but that it is currently operating at a deficit because payment of retirement benefits and administrative expenses exceed the income from contributions to the tune of about $4 million per year. Plaintiffs argue that the merger of the two funds will cause the Teamsters Fund to incur substantial liabilities to the present participants of the Brewery Fund which will jeopardize the payment of present benefits to members of the plaintiffs' class. In support of their motion for preliminary injunctive relief, the plaintiffs have filed an affidavit from Mr. Sol Tabor, the consulting actuary for the Teamsters Fund. He states in his affidavit that it is his opinion that the merger of the Brewery Workers Fund into the Teamsters Fund "will be to the detriment of the current [Teamsters Fund] Plan participants and beneficiaries." (Affidavit at 2). He goes on to say in his short affidavit that it is unlikely that the forty-year amortization period required by § 302 of ERISA, 29 U.S.C. § 1082, could be met if the two funds are merged and that the Teamsters Fund may have to apply to the Secretary of Labor to reduce pension benefits in the future.

### III. PLAINTIFFS' ALLEGATIONS

This court will take up each of the plaintiffs' claims one at a time, although not necessarily in the order stated above.

#### A. *Erisa § 208*

Plaintiffs' primary claim is that the merger does not comply with § 208 of ERISA, 29 U.S.C. § 1058. This section states:

A pension plan may not merge or consolidate with, or transfer its assets or liabilities to, any other plan after September 2, 1974, unless each participant in the plan would (if the plan then terminated) receive a benefit immediately after the merger, consolidation, or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation, or transfer (if the plan had then terminated). *This paragraph shall apply in the case of a multiemployer plan only to the extent determined by the Pension Benefit Guaranty Corporation.* (Emphasis added).

Both the Teamsters Fund and the Brewery Workers Fund are multiemployer plans. It is agreed by both the plaintiffs and the Brewery Workers Fund that the PBGC has not yet made § 208 applicable to multiemployer plans. And, in fact, the plaintiffs explain in their memorandum that the PBGC has said that its eventual decision on multiemployer plans will have prospective application only. The plaintiffs argue, however, that Congress did not intend all multiemployer plans to be exempt from § 208, and that the PBGC has failed to carry out its administrative duty by delaying this determination.

Whatever decision on multiemployer plans the PBGC ultimately makes, the statute plainly exempts this merger under the present state of the law. If the plaintiffs believe that the PBGC or any other administrative body has wrongfully failed to determine the applicability of this section to multiemployer plans, they should bring an action against the PBGC or those other bodies.[2]

#### B. *ERISA § 302*

§ 302 of ERISA, 29 U.S.C. § 1082, requires that various minimum funding standards be met by employee benefit plans. One such requirement is that the unfunded

---

**2.** The Teamsters Fund has instituted an action against the PBGC and the Brewery Workers

Fund in the United States District Court for the District of Columbia (Civ. No. 77–100).

past service liability of a multiemployer plan be amortized over a maximum of forty years. The plaintiffs claim that the merged fund will violate the Act because it will be unable to amortize its debts over a forty-year period, assuming present contribution levels continue.

In enacting ERISA, Congress recognized that the amortization requirements might cause hardship to some plans. Increased employer contributions were expected under the new funding standards. *See* H.R. Rep. No. 93–807, 93d Cong., 2d Sess., *reprinted in* [1974] U.S. Code Cong. & Admin. News, pp. 4670, 4690–4696. Also, because the draftsmen were aware that some multiemployer plans were not adequately funded and would require a transition period to meet the new standards, the statute provides several escape routes for plans that cannot meet the amortization requisites of 29 U.S.C. § 1082(b)(2).

For instance, under 29 U.S.C. § 1083(a), the Secretary of the Treasury may waive the minimum funding requirements of § 1082(a) for a plan year if 10% or more of the employers in a multiemployer plan are unable to meet the minimum funding standards without "substantial business hardship[3] and if application of the standard would be adverse to the interests of plan participants in the aggregate." The statute sets a limit on the Secretary's power, allow-

ing him to waive the minimum funding standard for any particular plan for not more than five out of any fifteen consecutive fund years.

29 U.S.C. § 1084(a) allows the Secretary to extend up to ten years the number of years of amortization of a plan "if he determines that such extension would carry out the purposes of this Act and would provide adequate protection for participants under the plan and their beneficiaries" and if he makes certain other findings required by the statute.

■ The plaintiffs contend that the merger would vitiate these alternatives of variance from minimum funding standards (29 U.S.C. § 1083) and extension of amortization period [29 U.S.C. § 1084(a)] because of the restrictions on the use of these alternatives contained in 29 U.S.C. § 1084(b). However, § 1084(b) refers to plan amendments *after* extensions under § 1084(a) or waivers under § 1083 have been granted,[4] and, therefore, is not applicable here. If the merger results in difficulties in meeting the funding standards, the statute provides the necessary mechanisms to deal with these problems.

## C. *ERISA § 1343*

■ With regard to the 29 U.S.C. § 1343(b)(8) "reportable event" claim, the

---

**3.** 29 U.S.C. § 1083(b) provides:

For purposes of this part, the factors taken into account in determining substantial business hardship shall include (but shall not be limited to) whether—

(1) the employer is operating at an economic loss,

(2) there is substantial unemployment or underemployment in the trade or business and in the industry concerned,

(3) the sales and profits of the industry concerned are depressed or declining, and

(4) it is reasonable to expect that the plan will be continued only if the waiver is granted.

**4.** 29 U.S.C. § 1084(b)(1) provides that:

No amendment of the plan which increases the liabilities of the plan by reason of any increase in benefits, any change in the accrual of benefits, or any change in the rate at which benefits become nonforfeitable under the plan shall be adopted if a waiver under section 1083(a) of this title or an extension of

time under subsection (a) of this section is in effect with respect to the plan, or if a plan amendment described in section 1082(c)(8) of this title has been made at any time in the preceding 12 months (24 months in the case of a multiemployer plan). If a plan is amended in violation of the preceding sentence, any such waiver, or extension of time, shall not apply to any plan year ending on or after the date on which such amendment is adopted.

The restrictions contained in (b)(1) are qualified by the exemptions contained in 29 U.S.C. § 1084(b)(2), which reads:

(2) Paragraph (1) shall not apply to any plan amendment which—

(A) the Secretary determines to be reasonable and which provides for only de minimis increases in the liabilities of the plan.

(B) only repeals an amendment described in section 1082(c)(8) of this title, or

(C) is required as a condition of qualification under part I of subchapter D, of chapter 1, of Title 26.

Brewery Workers Fund points out that the PBGC has been notified of the merger. In any case, 29 U.S.C. § 1303(e) provides that the PBGC shall have the power to bring any action for appropriate relief of violations of 29 U.S.C. § 1343. If any participant in a plan or beneficiary of a plan feels wronged by any action of the PBGC, he may bring an action against that body under 29 U.S.C. § 1303(f).

### D. *ERISA § 502(a)(3)*

29 U.S.C. § 1132(a) states that:

A civil action may be brought—

\* \* \* \* \* \*

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter *or the terms of the plan.* (Emphasis added).

It is the plaintiffs' claim that the merger is not in the best interests of Teamsters Fund participants because the Brewery Workers Fund is operating at a loss and the integration of the two funds will thereby harm the Teamsters Fund beneficiaries. Since the Teamsters Fund plan requires its trustees to administer the plan in the best interests of its participants, the plaintiffs claim a cause of action under § 1132(a)(3) to enforce this fiduciary duty. The plaintiffs do not allege, however, that the Teamsters Fund trustees' decision to merge the funds was not in their best interests at the time it was made, over 3½ years ago.

This same argument was made in the state court action (Defendant Brewery Workers Fund Reply Affidavit, Ex. 3, at 4), where the Teamsters Fund trustees argued that complying with the contract would perforce cause them to violate their fiduciary duties to the plan participants under ERISA. Although the plaintiffs argue that they were ignorant of that action throughout its movement from the trial court level through Appellate Division action and denial of leave to appeal by the Court of Appeals, they cannot so easily disassociate themselves from that lawsuit for, as the Second Circuit recently pointed out:

Generally speaking, one whose interests were adequately represented by another vested with the authority of representation is bound by the judgment, although not formally a party to the litigation. *Expert Electric, Inc. v. Levine,* 554 F.2d 1227 at 1233 (2d Cir. 1977).

■ Here, the trustees, in defending the state court suit, were attempting to avoid a merger they believed would be deleterious to the Teamsters Fund and, necessarily, deleterious to the Teamsters Fund participants. This court finds that privity exists between the trustee and the trust beneficiaries, and the state court decision is thus binding on them by virtue of the doctrine of res judicata. *See* 1B MOORE'S FEDERAL PRACTICE ¶ 0.411, at 1256 (2d ed. 1974).

### E. *ERISA § 3001(a)*

Section 3001(a) of ERISA, 29 U.S.C. § 1201(a) provides:

Before issuing an advance determination of whether a pension, profit-sharing, or stock bonus plan . . . meets the requirements of part I of subchapter D of chapter 1 of Title 26, the Secretary of the Treasury shall require the person applying for the determination to provide, in addition to any material and information necessary for such determination, such other material and information as may reasonably be made available at the time such application is made as the Secretary of Labor may require under subchapter I of this chapter for the administration of that subchapter. *The Secretary of the Treasury shall also require that the applicant provide evidence satisfactory to the Secretary that the applicant has notified each employee who qualifies as an interested party . . . of the application for a determination.* (Emphasis added).

■ The merger agreement, as explained above, was conditioned upon approval by the I.R.S. of the tax status of the merged plan. This approval was not granted until September 28, 1976. The long delay was evidently caused by the refusal of the Teamsters Fund to cooperate in requesting the approval, since it had decided in Febru-

ary of 1974 to abrogate the proposed merger.

The notice requirements of § 1201(a) provide interested employees with the opportunity to comment on the proposal to the Secretary of the Treasury. In addition, the PBGC and, in appropriate instances, the Secretary of Labor, may comment on the application.

If an employee objects to the determination of the Secretary on the qualification or lack of qualification of an employee benefit plan under 26 U.S.C. § 401, he may institute a declaratory judgment action in the Tax Court under 26 U.S.C. § 7476 to challenge the Secretary's decision. However, there is no provision in 29 U.S.C. § 1201, or in 26 U.S.C. § 7476, for any such action to be brought in the district court.

Plaintiffs claim that the failure of the Brewery Workers Fund to notify plaintiffs about the I.R.S. application has caused them to be shut out of the Tax Court by the 90-day limitation established in 26 U.S.C. § 7476(b)(5).[5] This provision, however, is tied to notice from the Secretary and, since the plaintiffs were not so notified, the limitation would not appear to bind them.

It should also be noted that 26 U.S.C. § 401, which prescribes the criteria for a qualifying pension plan, includes the following proviso, which keys into 29 U.S.C. § 1058:

> (12) A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that in the case of any merger or consolidation with, or transfer of assets or liabilities to, any other plan after September 2, 1974, each participant in the plan would (if the plan then terminated) receive a benefit immediately after the merger, consolidation, or transfer which is equal to or greater than the benefit he

would have been entitled to receive immediately before the merger, consolidation, or transfer (if the plan had then terminated). *This paragraph shall apply in the case of a multiemployer plan only to the extent determined by the Pension Benefit Guaranty Corporation.* (Emphasis added).

## IV. REQUEST FOR PRELIMINARY INJUNCTION

The Second Circuit has repeatedly stated the standard for preliminary injunctive relief. Plaintiff must make

> a clear showing of either (1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Sonesta International Hotels v. Wellington Associates,* 483 F.2d 247, 250 (2d Cir. 1973), quoted in *Triebwasser & Katz v. American Telephone and Telegraph Co.,* 535 F.2d 1356, 1358 (2d Cir. 1976), and *Campmeyer v. Nyquist,* No. 76–7383, slip op. at 2957 (2d Cir. Apr. 15, 1977).

Plaintiffs have failed to convince this court that preliminary injunctive relief is warranted in this case. In none of the causes of action alleged have plaintiffs shown probable success on the merits. Furthermore, the court does not believe that the balance of hardships is tipped sharply in plaintiffs' direction. In fact, the Brewery Workers Fund makes a strong argument that the hardships are more heavily weighted on it. The Brewery Workers Fund's assets have been in a state of limbo because the Teamsters Fund trustees have refused to accept them. These assets require close

---

5. 26 U.S.C. § 7476(b)(5) states:

    If the Secretary sends by certified or registered mail notice of his determination with respect to the qualification of the plan to the persons referred to in paragraph (1) (or, in the case of employees referred to in paragraph (1), to any individual designated under regulations prescribed by the Secretary as a representative of such employee), no proceeding may be initiated under this section by any person unless the pleading is filed before the ninety-first day after the day after such notice is mailed to such person (or to his designated representative, in the case of an employee).

**958**

supervision in order that important investment decisions can be timely made. In addition, the Brewery Workers Fund participants' status has been uncertain for over one-half year, ever since the Brewery Workers Fund trustees resigned and attempted to transfer the Fund's assets and responsibilities to the Teamsters Fund.

 Preliminary injunctive relief is an extraordinary remedy that is not lightly granted. *See Pride v. Community School Board,* 482 F.2d 257, 264 (2d Cir. 1973). After considering all the factors, especially plaintiffs' long delay in bringing this action and the state court judgment that the merger is complete, and the subsequent order directing the Teamsters Fund trustees to proceed with the merger, this court finds this case particularly inappropriate for granting the requested relief.

### V. MOTION TO DISMISS

The defendant Brewery Workers Fund has moved to dismiss the plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be based. For purposes of this motion, the court must take as true the allegations stated in the plaintiffs' complaint. *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Heit v. Weitzen,* 402 F.2d 909, 913 (2d Cir. 1968), *cert. denied,* 395 U.S. 903, 89 S.Ct. 1740, 23 L.Ed.2d 217 (1969). The plaintiffs' complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted).

After close examination of plaintiffs' amended complaint, I believe that it warrants dismissal. The jurisdictional authority conferred on this court does not extend to the claim under 29 U.S.C. § 1343, and the § 1201 claim should be brought in the Tax Court. The merger being contested is not covered by the prescriptions of 29 U.S.C. § 1058. Provision is made in the Act itself, 29 U.S.C. §§ 1083, 1084 for adjustments in amortization schedules. Finally, the claim

that the merger is not in the best interests of the Teamsters Fund participants was argued before the Appellate Division and decided adversely to the plaintiffs.

Plaintiffs' complaint is dismissed for failure to state a claim upon which relief can be granted.

So ordered.