NEW YORK STATE TEAMSTERS CONFERENCE PENSION AND RETIREMENT FUND, WILLIAM H. MOSLEY, SR., ADMINISTRATOR, ET AL [1], Petitioners v. COMMISSIONER OF INTERNAL REVENUE, JOHN HOH; KENNETH CARROLL; DAVID GREENHUT; DOMINIC ACCETTA; ANGELO FERRARO; AND A. J. GRAU, TRUSTEES OF THE BREWERY WORKERS PENSION FUND, Respondents [2]
New York State Teamsters Conference Pension & Retirement Fund v. Commissioner
Docket Nos. 1145-79R, 1146-79R, 1147-79R, 1148-79R
United States Tax Court
T.C. Memo 1982-594; 1982 Tax Ct. Memo LEXIS 152; 44 T.C.M. (CCH) 1366; T.C.M. (RIA) 82594; 3 Employee Benefits Cas. (BNA) 2222; October 7, 1982. Robert D. Whoriskey, for the petitioners. Cheryl White, for the respondent, Commissioner of Internal Revenue. *153 Bettina B. Plevan and Susan Martin for the respondents, John Hoh, Kenneth Carroll, David Greenhut, Dominic Accetta, Angelo Ferraro, and A. J. Grau, Trustees of the Brewery Workers Pension Fund. DAWSON
MEMORANDUM OPINION DAWSON, Judge: These cases were assigned to Special Trial Judge Darrell D. Hallett for ruling on Motions to Dismiss for Lack of Jurisdiction filed by the respondents John Hoh, Kenneth Carroll, David Greenhut, Dominic Accetta, Angelo Ferraro, and A. J. Grau, (Trustees of the Brewery Workers Fund). After review of the record we agree with and adopt the Special Trial Judge's opinion which is set forth below. [3]
OPINION OF THE SPECIAL TRIAL JUDGE HALLETT, Special Trial Judge: Petitioners brought these actions for declaratory judgment relying for jurisdiction upon section 7476. [4] After the former trustees of the Brewery *154 Workers Fund were joined as parties, they filed motions to dismiss each case, or in the alternative, to strike certain allegations in the petitions, for lack of jurisdiction. Briefs were thereafter filed on behalf of all parties in regard to the motions, and, on February 25, 1981, a hearing was held before the Court in Washington, D.C. All parties were represented by counsel at the hearing. At the conclusion of the hearing, the motions were taken under advisement. We conclude that the motions should be granted and each consolidated case should be dismissed for lack of jurisdiction. The circumstances leading up to the filing of these actions, not disputed by the parties, are as follows. In 1973, an agreement was entered into by the Brewery Workers Fund and the New York State Teamsters Conference Pension and Retirement Fund (Teamsters Fund) providing for a merger of the Brewery Workers Fund into the Teamsters Fund. Subsequent to the agreement, Rheingold Breweries, a large New York brewery operation and one of the employer-contributors to the Brewery Workers Fund, *155 ceased operations. By letter dated February 12, 1974, the Teamsters Fund notified the Brewery Workers Fund that because of their concern about the closing of the Rheingold Breweries, the trustees of the Teamsters Fund voted not to proceed with the merger. Thereafter, the Brewery Workers Fund brought suit in the New York State Supreme Court for specific performance of the 1973 agreement. On April 29, 1975, the New York Supreme Court granted the summary judgment motion filed by the Brewery Workers Fund and directed the Teamsters Fund to specifically perform the contract of merger. The trial court's opinion and order in this regard was affirmed on appeal in Brewery Workers Pension Fund v. New York State Teamsters Conference Pension and Retirement Fund,49 App. Div. 2d 755, 374 N.Y.S. 2d 590 (2d Dept. 1975). Further efforts in the Teamsters Fund to obtain reversal of the case were unsuccessful. [5]
*156 The 1973 agreement provided that it was conditioned upon the Commissioner's approval of the qualification of the merged funds for Federal tax purposes.In connection with the proceedings before the New York State courts regarding the enforceability of the merger agreement, the Teamsters Fund was ordered to "cooperate in the preparation and submission of the application to the Internal Revenue Service and to furnish the information requested by the actuary." By letter dated March 8, 1976, counsel for the Brewery Workers Fund submitted to the District Director, Internal Revenue Service, Buffalo, New York, a request for a determination that the "qualified and exempt status of the [Teamsters Fund] will not be affected by a merger of a local, multi-employer negotiated pension fund into the [Teamsters Fund] and that the merger of the two funds meets the requirements of the Employee Retirement Income Security Act [Pub. L. 93-406, 88 Stat. 995, hereinafter ERISA] in that the Brewery Workers Pension Fund will not 'terminate' as a result of the merger." [6]
*157 The Brewery Workers Fund contends that the Teamsters Fund was notified of the filing of the determination request with the district director shortly after the request was made, and that efforts previously had been made by the Brewery Workers Fund to obtain the cooperation of the Teamsters Fund in making the determination request. The Teamsters Fund denies that it had notice of the request until after the Internal Revenue Service made a determination in response to it. By letter dated September 28, 1976, the Buffalo District Director responded to the ruling request and concluded that "Based on the information supplied, we have made a favorable determination on your application identified above." In a letter dated November 19, 1976, to the Buffalo District Director, the Teamsters Fund stated that it first received the district director's letter of September 28, 1976, on November 10, 1976, and that it "never filed an application for such approval nor did [it] join with any other party in filing an application." The Teamsters Fund requested that the determination letter of September 28, 1976, be revoked. The matter was thereafter referred to the key district director in Brooklyn, *158 New York. The Brooklyn District Director's office then requested technical advice from the National Office, Internal Revenue Service, on the following questions: (1) Whether interested parties received sufficient notice of the Brewery Workers Fund's determination letter application to satisfy the notice requirements of the applicable Code and regulation provisions; (2) whether the absence of notice should result in the withdrawal of the determination letter approving the merger of the two funds. Various conferences were then held in the National Office and were attended by officials of the Internal Revenue Service and the two funds. Subsequently, a technical advice memorandum was issued by the National Office concluding that; (1) participants in the Teamsters Fund were "interested parties" and should have received notice of the ruling request that resulted in the determination letter of September 28, 1976; and (2) the interested parties involved should be given notice, but the determination letter should not be withdrawn during the period within which the interested parties were to be afforded the opportunity to comment on the determination. The following letter dated October 25, 1978, was *159 sent by the Chief of the Employee Plans - Exempt Organization Division of the Brooklyn District Director's Office to counsel for the Teamsters Fund: The enclosed Technical Advice copy is being sent to you in accordance with your telephone request of October 10, 1978. You will note that with respect to Issue (1) the Technical Advice concludes that interested parties of the Teamsters Fund were not given proper notice of the determination letter application. With respect to Issue (2) the Technical Advice concludes that interested parties not previously given notice should now be given notice. Please furnish this office with evidence that proper notice has been given to all interested parties within 30 days of the date of this letter. On January 25, 1979, petitions were filed in these four consolidated cases. Mr. Mosley's petition alleges that Mr. Mosley is the administrator and a trustee of the Teamsters Fund. After setting forth allegations concerning the merger of the two funds and the circumstances relating to the September 28, 1976, determination letter and subsequent proceedings involving the Teamsters Fund's attempt to have the Commissioner revoke his prior determination, *160 Mr. Mosley requests this Court to make determinations as follows: (1) That the determination letter was illegally issued and is invalid; (2) that the Commissioner's October 25, 1978, letter to counsel for the Teamsters Fund, determining not to withdraw the determination letter, similarly was invalid; and that (3) an application (Form 5303) be submitted to the Internal Revenue Service by the trustees of the Teamsters Fund for a determination. The other three petitions filed in these cases allege that each petitioner is a covered participant in the Teamsters Fund; otherwise, the petitions make the identical allegations and request the same relief as is set forth in Mr. Mosley's petition. [7]
*161 The Brewery Workers Fund relies upon the following grounds in support of its motion to dismiss Mr. Mosley's case, or in the alternative, certain allegations made in his petition; (1) Petitioner failed to timely file the petition; (2) there is no "actual controversy" between Mr. Mosley, in his capacity as administrator of the Teamsters Fund, and respondent, Commissioner of Internal Revenue Service; (3) the technical advice issued by the National Office is not a "determination" within the meaning of section 7476; and (4) the petitions raise matters not before the Commissioner when he made the 1976 determination and these matters are therefore outside the scope of the administrative record and the permissible scope of review by this Court under section 7476. The Brewery Workers Fund contends that the petitions of Mr. Delguidice, Mr. Woodhead, and Mr. Dunadee likewise must be dismissed because (1) Petitioners did not submit comment letters and exhaust their administrative remedies as required by section 7476; (2) the technical advice issued by the National Office, which petitioners seek to invalidate, is not a determination within the meaning of section 7476; and (3) the petitions raise *162 matters not before the Commissioner when he made the 1976 determination and these matters are therefore outside the scope of the administrative record and the permissible scope of review by this Court under section 7476. Before addressing some of the specific grounds raised by the Brewery Workers Fund in their motions, we believe there are fundamental defects regarding jurisdiction contained in all four petitions that should first be addressed. Each petition concludes with a request that this Court make the following determinations: (1) That the 1976 determination letter was "illegally issued and invalid"; (2) that the Commissioner's October 25, 1978 letter was similarly "invalid"; and (3) that a new application for determination with respect to the merger agreement should be submitted to the Commissioner. Notably absent from the requested relief is a request that we determine that as a result of the merger the Teamsters Fund is not a qualified plan. But an actual controversy involving the issue as to whether a plan is or is not qualified is an essential requirement for jurisdiction under section 7476. In this regard, *163 section 7476 confers jurisdiction on this Court to review and make a declaration concerning an actual controversy related to the Commissioner's determination with respect to the initial or continuing qualification of a plan. Under section 7476(b)(1), a plan administrator or an employee who is an interested party may qualify as a petitioner seeking relief authorized by section 7476(a). However, section 7476 is not a broad grant of jurisdiction to the Tax Court to conduct a review of all matters related to controversies over retirement plans and to fashion equitable remedies to resolve such controversies. Rather, it grants jurisdiction in relatively narrow circumstances. See Sheppard & Myers, Inc. v. Commissioner,67 T.C. 26 (1976); Thompson v. Commissioner,71 T.C. 32 (1978). The limited jurisdiction of this Court is succinctly described in the legislative history concerning section 7476 as follows: The Tax Court is to have jurisdiction to declare whether a plan is, or is not, a qualified plan, * * *. [S. Rept. 93-383 (1973) 1974-3 C.B. (Supp.) 80, 193.] Moreover, *164 in reviewing a determination by the Commissioner regarding qualification of a plan, the Court is generally restricted to deciding "whether the Commissioner, in making his determination, properly applied the law to the facts presented in the request for determination." Thompson v. Commissioner,supra at 36-37. Congress "did not expect the Tax Court to conduct a trial de novo and make an independent examination of the facts to determine if the subject plan was qualified." Tamko Asphalt Products, Inc. v. Commissioner,71 T.C. 824, 837 (1979). The petitioners in these cases do not allege there has been a failure to make a determination within the meaning of section 7476(a)(2); rather, petitioners contend there is an actual controversy over a determination by the Commissioner as to the continuing qualification of a plan within the meaning of section 7476(a)(1). Petitioners seek to bring themselves within the jurisdictional requirements of these provisions by challenging the Commissioner's determination of September 28, 1976. We agree the Commissioner's ruling on that date amounted to a "determination" regarding the "continuing qualification of *165 a plan" within the meaning of section 7476(a)(1). However, we disagree that the petitions allege as a ground for setting aside that determination any matter with which we have jurisdiction to consider. The requests that we declare the Commissioner's letters of 1976 and 1978 to be "illegally issued" or "invalid" are patently beyond the scope of jurisdiction conferred on this Court by section 7476. Significantly, not one of the five grounds alleged in support of these requests for relief (in paragraph 9 of the petitions) sets forth any substantive reasons why the Teamsters Fund plan should be disqualified as a result of the merger. That is, the petitions do not allege that provisions of the plan violate the sections of the Code relating to participation, coverage, discrimination or vesting. Rather, the alleged grounds all relate to matters concerning what petitioners contend amount to irregularities in connection with the application for issuance of the 1976 determination and the subsequent proceedings concerning the Teamsters Fund request that the Internal Revenue Service withdraw that determination. Certainly, section 7476 on its face lends no support to the notion that this *166 Court is broadly authorized to conduct a review of factual matters relating to alleged procedural irregularities in connection with the administrative process relating to the application for a determination, and to set aside a determination based upon the results of such a review. Section 7476(b) does specifically require petitioners to participate in the administrative process and "exhaust administrative remedies," and section 7476(b)(1) authorizes the Tax Court to decline to accept review of a Commissioner's determination regarding a qualification of a retirement plan unless the petitioner establishes that adequate notice was given to interested parties of the application for determination. But beyond these specific statutory provisions authorizing the Tax Court's inquiry into procedural matters relating to the administrative process, neither the statute nor the legislative history discloses that the extent of our jurisdiction under section 7476 is to involve any more than a review of the reasons provided by the Internal Revenue Service as to the qualification or disqualification of a plan and determine from this review whether a plan is qualified or not. To the extent the petitioners *167 seek to raise matters related to qualification that are not involved within the scope of those considered by the Commissioner when he made his determination that the Teamsters Fund would remain qualified after the merger, we agree with the Brewery Workers Fund that we have no jurisdiction to consider these matters. In this regard, the September 28, 1976 determination was in response to the letter request submitted to counsel for the Brewery Workers Fund that the Commissioner determine (1) the qualified and exempt status of the Teamsters Fund would not be affected by the merger and (2) the Brewery Workers Fund would not "terminate" as a result of the merger. Submitted with the request was a Standard Form 5303, the merger agreement, minutes of meetings of trustees of both of these funds, adopting the merger agreement and a "brief statement concerning the merger and the affect of the merger upon the benefits of the Brewery Workers Fund participants." It was based upon this request and the materials submitted with it that the Commissioner made the "favorable determination" of September 28, 1976. Each petition in these cases alleges in part that "at no point were major substantive issues *168 of law and fact concerning the termination, partial termination, and qualification of the funds ever raised or considered by the Internal Revenue Service before the determination letter was issued." To the extent this is the case, we lack jurisdiction because, as stated above, our jurisdiction is limited to a review of the Commissioner's conclusion based upon the reason stated in his determination and the record before him. Significantly, petitioners do not even allege that the law, as applied to the facts presented to the Commissioner in the 1976 determination request, compels a conclusion that the Teamsters Fund fails to qualify and/or that the Brewery Workers Fund would terminate as a result of the merger. Rather, petitioners allege facts which they admit are outside the materials relied upon by the Commissioner in reaching his determination, and they request that based upon these facts we make a declaration that the Commissioner's determination was "illegally issued and invalid". It is clear to us that the statute and our prior judicial interpretations of it preclude us from making such a denovo investigation into the facts and a declaration concerning the "validity" *169 of the Commissioner's determination. Petitioners allege that they were given no opportunity to submit comments, information, or arguments in connection with the September 28, 1976, determination. Assuming for purposes of these motions that this was the case, we nevertheless see no basis for this Court going outside the matters that were placed before the Commissioner when he made his determination and, contrary to the authorities discussed above, conduct an independent hearing concerning the facts and arguments that petitioners now wish to raise. We recognize that in Hawes v. Commissioner,73 T.C. 916 (1980) we declined to dismiss a retired employee's petition for declaratory judgment when the retired employee was not properly notified of his former employer's request for determination and therefore did not submit a comment letter regarding this determination prior to his instituting suit for declaratory judgment. We held that the case should not be dismissed for failure to exhaust administrative remedies, and we suggested the Commissioner reopen consideration of the plan so the employee's comments could be considered. Here, well before the petitions were filed, *170 and after it was brought to the Commissioner's attention that notice of the 1976 determination had not been given to individuals arguably entitled to receive it, the Commissioner commenced reconsideration of the prior determination and directed that interested parties be notified. The three employee petitioners in these cases chose not to submit comments.The Teamsters Fund was given ample opportunity to submit materials to the Commissioner in connection with the proceedings relating to the reconsideration of the determination, and it has in fact submitted a considerable amount of information. Petitioners simply seek in these cases to obtain a judicial declaration concerning the 1976 determination based upon information submitted to the Commissioner after that determination was made. In these circumstances, our decision in Hawes certainly does not justify our going outside the administrative record upon which the 1976 determination was based. It is likewise clear that we have no jurisdiction to declare, as the petitions request, that the Teamsters Fund should submit a new application for qualification to the Commissioner. Since there is no requirement that a determination *171 even be sought from the Commissioner concerning the qualification of a retirement plan (see section 601.201(q)(3), Statement of Procedural Rules, hereinafter referred to as Procedural Rules) we see no basis for petitioners' request that we should direct in this case that an application for qualification be submitted. Section 7476 on its face certainly grants no jurisdiction for us to do so, and petitioners point to no authority supporting the notion that we have jurisdiction to fashion such a remedy. In addition to seeking a declaration from this Court concerning the September 28, 1976, determination letter, petitioners seek a declaration that the Commissioner's letter of October 25, 1978, and/or the technical advice transmitted with it was invalid. We agree with respondents that these communications do not constitute a "determination" within the meaning of section 7476(a).Not every determination made by the Internal Revenue Service concerning the qualification of a retirement plan constitutes a "determination" within the meaning of section 7476.Rather, the term "determination" as used in section 7476(a) has "specific technical meaning." Shut Out Dee-Fence, Inc. v. Commissioner,77 T.C. 1197 (1981). *172 The term is defined in section 601.201(a)(3), Procedural Rules as "a written statement issued by a district director in response to a written inquiry by an individual or an organization * * *." More specifically, as regards retirement plans, section 601.201(o)(2), Procedural Rules, gives authority to district directors of key district offices to issue determinations concerning initial or continuing qualification of retirement plans.The key district director may issue a "proposed" or "final determination letter" in response to a request. A proposed determination notifies the applicant that the key district director proposes to issue a determination adverse to the applicant, and gives the applicant the opportunity to request appeals office review of the proposal. A final determination is a notice by either the key district director (or, if there has been an appeal from a proposed determination, an appeals office) that the applicant's plan either satisfies or fails to satisfy the qualification requirements of the Code. Section 601.201(o)(7) and (9), Procedural Rules. In connection with the consideration of a request for determination as to the qualification of a retirement plan, *173 the key district director is authorized to obtain technical advice from the National Office. "Technical advice" is defined as: [A]dvice or guidance as to the interpretation and proper application of Internal Revenue laws, related statutes, and/or regulations, to a specific set of facts, in Employee Plans and Exempt Organization matters, furnished by the National Office upon request of a key district office or Appeals office in connection with the processing and consideration of a nondocketed case. It is furnished as a means of assisting service personnel in closing cases and establishing and maintaining consistent holdings. [Sec. 601.201(n)(9)(i), Procedural Rules] The National Office reply to a request for technical advice will generally be in the form of a "technical advice memorandum," which contains a discussion of the facts and issues and states the conclusion of the National Office, together with a transmittal memorandum to the key district director making the request. Sections 601.201(n)(9)(vi)(c), and (d), Procedural Rules. On receipt of these documents from the National Office, the district director may either request reconsideration or "proceed to process *174 the case on the basis of the conclusions expressed in the technical advice memorandum." Section 601.201(n)(9)(vii)(a), Procedural Rules. It is clear from these rules that the National Office technical advice memorandum issued in response to the request of the Brooklyn District Employee Plans - Exempt Organization Division is not a determination which forms the basis for judicial review under section 7476(a). Rather, it is simply advice from one level of the Internal Revenue Service - the National Office - to another level - the key district director - which has the authority to issue the determination itself. [8]
*175 Further, the district director's letter of October 25, 1978, to the Teamsters Fund counsel clearly is not itself a determination concerning the continuing qualification of the Teamsters Fund Plan. Rather, it merely amounts to a transmittal of the technical advice memorandum, and a request that the Teamsters Fund provide evidence that interested parties have been given notice and an opportunity to comment. The clear import of the letter was the district director's notification to the Teamsters Fund that the district director would continue consideration of the Teamsters Fund request that the 1976 determination letter be "withdrawn" but that the next step, procedurally, was the issuance of notice to interested parties. We simply cannot conclude in these circumstances that the district director made a determination in 1978 that, after considering the information that had been submitted to him, the merged funds were or were not qualified under the Internal Revenue Code. Rather, the district director clearly deferred making that determination in October 1978, until interested parties had the opportunity to comment. Because the October 25, 1978 notification did not constitute a determination, *176 then petitioner Mosley must predicate jurisdiction upon the September 28, 1976 determination. However, as plan administrator, [9] petitioner Mosley had, under section 7476(b)(5) no more than 90 days from the mailing of the notice of determination to file his petition with this Court. We agree with respondents that Mr. Mosley's petition is therefore untimely and we lack jurisdiction to consider it. In reaching this conclusion, we have considered Mr. Mosley's contention that the September 28, 1976, determination was not "final". However, the letter on its face states that the district director has concluded that the merged plan was qualified, thus falling within the definition of a "final determination" under section 601.201(o)(9), Procedural Rules. The mere fact that the district director chose to reconsider the qualification issue after issuance of the final determination and pursuant to request of the Teamsters Fund does not serve to make the September 28, 1976, letter a "proposed determination." A "final" ruling or determination does not preclude the Commissioner from later reexamining his prior conclusion, particularly where new facts are brought to light. In this regard, section *177 601.201, Procedural Rules, provides that a ruling or determination letter will be issued based upon the information submitted by the applicant who makes the request, and that failure of the applicant to disclose relevant facts is grounds to retroactively revoke a prior determination. But the possibility of reconsideration of a determination certainly does not make that determination a proposed one. If it did, no determination would ever be final. Our conclusions set forth above require dismissal of all cases for lack of jurisdiction. We therefore need not and do not pass upon the other arguments made *178 by respondents in support of their positions.
Appropriate orders of dismissal will be entered.
Footnotes
1. Cases of the following petitioners are consolidated herewith: John Delguidice, docket no. 1146-79R; Wayne W. Woodhead, docket no. 1147-79R, and Anthony J. Dunadee, docket no. 1148-79R. ↩
2. Since the Commissoner of Internal Revenue, John Hoh, Kenneth Carroll, David Greenhut, Dominic Accetta, Angelo Ferraro, and A. J. Grau are respondents in these consolidated cases, the Commissioner of Internal Revenue will be referred to as Commissioner, and the other respondents, who were trustees of the Brewery Workers Pension Fund, will be referred to collectively as the Brewery Workers Fund.↩
3. Since this is a preliminary jurisdictional motion, The Court has concluded that the post-trial procedures of Rule 182, Tax Court Rules of Practice and Procedure↩, are not applicable in the present circumstances. This conclusion is based on the authority of the "otherwise provided" language of that rule.
4. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
5. Court proceedings over the merger agreement continued in various courts up through the time that motions in these cases were submitted. In this regard, in early 1977 the Brewery Workers Fund requested the New York State Supreme Court to compel the Teamsters Fund to accept the assets of the Brewery Workers Fund and administer the funds pursuant to the merger agreement. This request for relief was granted and the trial court's order was upheld on appeal. Subsequent contempt proceedings resulted in the Teamsters Fund taking over administration of the Brewery Workers Fund (as a separate division of the Teamsters Fund), although motions by the Teamsters Fund to obtain relief from the orders and judgments of the New York State courts continued. In January 1977, individuals who were employees or retired employees covered by the Teamsters Fund brought an action in the United States District Court for the Western District of New York to enjoin the merger of the two funds on the ground that the merger violated the provisions of the Employee Retirement Security Act of 1974 [ERISA] 29 U.S.C. 1001 et seq. This action was dismissed by the District Court in Cicatello v. Brewery Workers Pension Plan,434 F. Supp. 950, (W.D.N.Y. 1977), affd. 578 F.2d 1366 (2nd Cir. 1978). In 1979, the Court of Appeals for the District of Columbia affirmed an unpublished opinion of the United States District Court for the District of Columbia dismissing an action brought by the Teamsters Fund in that court to set aside the merger. New York Teamsters Conference Pension and Retirement Fund v. Pension Benefit Guaranty Corp.,591 F.2d 953↩ (D.C. Cir. 1979).
6. An unsigned application Form 5303 was submitted with the letter. The application was thereafter returned by the district director to counsel for the Brewery Workers Fund for signature and it was resubmitted after being signed by the Chairman of the Brewery Workers Fund.↩
7. In addition to these four consolidated cases, four other declaratory judgment cases involving the merger of the two funds have been filed. One, another action brought by Mr. Mosley as administrator of the Teamsters Fund, is based upon a request for determination filed by the Teamsters Fund on September 11, 1978, and a response to that request made by the Commissioner on December 26, 1978. The remaining three cases involve actions by individuals who are participants in the Teamsters Fund claiming to be interested parties and seeking declarations from this Court concerning the September 28, 1976, letter issued by the Brooklyn District Director and another letter issued by the District Director in July 1979, as well as other relief. The Brewery Workers Fund has filed motions to dismiss each of these cases, and those motions are the subject of separate opinions.↩
8. Petitioners note legislative history to the effect that an employer will be deemed to have exhausted his administrative remedies if he either appeals a proposed determination of the district director to the appeals office, or has requested or obtained through the district director technical advice from the National Office. S. Rept. 93-383 (1973) 1974-3 C.B. (Supp.) 193; H. Rept. 93-807 (1974), 1974-3 C.B. (Supp.) 341. These statements in the legislative history are merely consistent with the procedural rules providing that where technical advice is obtained by the key district director, his determination will be consistent with the advice, and the applicant in that case cannot appeal the determination to the appeals office. Sections 601.201(n)(9)(viii) and 601.201(o)(2)(iii), Procedural Rules. The legislative history and the procedural rules in accordance with it clearly do not make the technical advice itself a determination within the meaning of section 7476↩.
9. The record clearly reflects that if Mr. Mosley is to qualify at all as a "petitioner" under section 7476(b)(1), he must do so in his capacity as a plan administrator. Although the petition alleges, in conclusory terms, that Mr. Mosley is an interested party within the meaning of section 7476(b)(1), the only factual allegation concerning Mr. Mosley's capacity refers to his position as administrator and trustee of the Teamsters Fund. Mr. Mosley makes no argument that he was in fact, "an employee" within the meaning of section 7476(b)(1)↩ and the applicable treasury regulations.