ROBERT C. WENZEL, ET AL [1], Petitioners v. COMMISSIONER OF INTERNAL REVENUE, JOHN HOH; KENNETH CARROLL; DAVID GREENHUT; DOMINIC ACCETTA; ANGELO FERRARO; AND A. J. GRAU, TRUSTEES OF THE BREWERY WORKERS PENSION FUND, Respondents [2]
Wenzel v. Commissioner
Docket Nos. 13141-79R, 13265-79R, 13332-79R
United States Tax Court
T.C. Memo 1982-595; 1982 Tax Ct. Memo LEXIS 153; 44 T.C.M. (CCH) 1373; T.C.M. (RIA) 82595; 3 Employee Benefits Cas. (BNA) 2231; October 7, 1982. Robert D. Whoriskey, for the petitioners. Cheryl White, for the respondent, Commissioner of Internal Revenue. Bettina B. Plevan and Susan Martin for the respondents, John Hoh, Kenneth Carroll, David Greenhut, Dominic Accetta, Angelo Ferraro, and A. J. Grau, Trustees of *155 the Brewery Workers Pension Fund. DAWSON
MEMORANDUM OPINION DAWSON, Judge: These cases were assigned to Special Trial Judge Darrell D. Hallett for ruling on Motions to Dismiss for Lack of Jurisdiction filed by the respondents John Hoh, Kenneth Carroll, David Greenhut, Dominic Accetta, Angelo Ferraro, and A. J. Grau, Former Trustees of the Brewery Workers Pension Fund. After review of the record we agree with and adopt the Special Trial Judge's opinion which is set forth below. [3]
OPINION OF THE SPECIAL TRIAL JUDGE HALLETT, Special Trial Judge: Petitioners brought these actions [4] for declaratory judgment relying for jurisdiction upon section 7476. [5] After the former trustees of the Brewery Workers Fund were joined as parties, they filed motions to dismiss each case, or in the alternative, to strike certain allegations in the petitions, for *156 lack of jurisdiction. Briefs were thereafter filed on behalf of all parties in regard to the motions, and, on February 25, 1981, a hearing was held before the Court in Washington, D.C. All parties were represented by counsel at the hearing. At the conclusion of the hearing, the motions to dismiss for lack of jurisdiction were taken under advisement. We conclude that the motions should be granted and each consolidated case should be dismissed for lack of jurisdiction. The circumstances leading up to the filing of these actions, not disputed by the parties, are as follows. In 1973, an agreement was entered into by the Brewery Workers Fund and the New York State Teamsters *157 Conference Pension and Retirement Fund (Teamsters Fund) providing for a merger of the Brewery Workers Fund into the Teamsters Fund. Subsequent to the agreement, Rheingold Breweries, a large New York brewery operation and one of the employer-contributors to the Brewery Workers Fund, ceased operations. By letter dated February 12, 1974, the Teamsters Fund notified the Brewery Workers Fund that because of concern about the closing of the Rheingold Breweries, the trustees of the Teamsters Fund voted not to proceed with the merger. Thereafter, the Brewery Workers Fund brought suit in the New York State Supreme Court for specific performance of the 1973 agreement. On April 29, 1975, the New York State Supreme Court granted the Brewery Workers Fund summary judgment motion and directed the Teamsters Fund to specifically perform the contract of merger. The trial court's opinion and order in this regard was affirmed on appeal in Brewery Workers Pension Fund v. New York State Teamsters Conference Pension and Retirement Fund,49 App. Div. 2d 755, 374 N.Y.S. 2d 590 (2d Dept. 1975). Further efforts by the Teamsters Fund to obtain reversal of the case were unsuccessful. [6]
*158 The 1973 agreement provided that it was conditioned upon the Commissioner's approval of the qualification of the merged funds for Federal tax purposes. In connection with the proceedings before the New York State courts regarding the enforceability of the merger agreement, the Teamsters Fund was ordered to "cooperate in the preparation and submission of the application to the Internal Revenue Service and to furnish the information requested by the actuary." By letter dated March 8, 1976, counsel for the Brewery Workers Fund submitted to the District Director, Internal Revenue Service, Buffalo, New York, a request for a determination that the "qualified and exempt status of the [Teamsters Fund] will not be affected by a merger of a local, multi-employer negotiated pension fund into the [Teamsters Fund] and that the merger of the two Funds meets the requirements of the Employee Retirement Income Security Act [Pub.L. 93-406, 88 Stat. 995, hereinafter ERISA] in that the Brewery Workers Pension Fund will not 'terminte' as a result of the merger." [7]
*159 The Brewery Workers Fund contends that the Teamsters Fund was notified of the filing of the determination request with the district director shortly after the request was made, and that efforts previously had been made by the Brewery Workers Fund to obtain the cooperation of the Teamsters Fund in making the determination request. The Teamsters Fund denied that it had notice of the request until after the Internal Revenue Service made a determination in response to it. By letter dated September 28, 1976, the Buffalo District Director responded to the ruling request and concluded that "Based on the information supplied, we have made a favorable determination on your application identified above." In a letter dated November 19, 1976, to the Buffalo District Director, the Teamsters Fund stated that it first received the district director's letter of September 28, 1976, on November 10, 1976, and that it "never filed an application for such approval nor did [it] join with any other party in filing an application." The Teamsters Fund requested that the determination letter of September 28, 1976, be revoked. The matter was thereafter referred to the key district director in Brooklyn, *160 New York. The Brooklyn District Director's office then requested technical advice from the National Office, Internal Revenue Service, on the following questions: (1) Whether interested parties received sufficient notice of the Brewery Workers Fund's determination letter application to statisfy the notice requirements of applicable provisions of the treasury regulations; (2) whether the absence of this notice should result in the withdrawal of the determination letter approving the merger of the Brewery Workers Fund with the Teamsters Fund. Various conferences were then held in the National Office and were attended by officials of the Internal Revenue Service and the two funds. Subsequently, a technical advice memorandum was issued by the National Office concluding that: (1) Under the applicable provisions of ERISA and the treasury regulations, participants in the Teamsters Fund were "interested parties" and should have received notice of the ruling request that resulted in the determination letter of September 28, 1976; and (2) the interested parties involved should be given notice, but the determination letter should not be withdrawn during the period within which the interested *161 parties were to be afforded the opportunity to comment on the determination. The following letter dated October 25, 1978, was sent by the Chief of the Employee Plans - Exempt Organization Division of the Brooklyn District Director's Office to counsel for the Teamsters Fund: The enclosed Technical Advice copy is being sent to you in accordance with your telephone request of October 10, 1978. You will note that with respect to Issue (1) the Technical Advice concludes that interested parties of the Teamsters Fund were not given proper notice of the determination letter application. With respect to Issue (2) the Technical Advice concludes that interested parties not previously given notice should now be given notice. Please furnish this office with evidence that proper notice has been given to all interested parties within 30 days of the date of this letter. Thereafter, the Teamsters Fund sent notices to its members ("interested parties") in accordance with the Brooklyn District Director's request. Many comments were received by the Commissioner from the Teamsters Fund members in response to the notices. In July 1979, the Brooklyn District Director sent notices to the interested *162 parties submitting comments as follows: After carefully reviewing the facts and circumstances in this case, and your comments, we have determined that the favorable determination letter issued on September 28, 1976, was proper under the Internal Revenue Code and the rules and regultions issued thereunder. In September 1979, petitions were filed in these three cases. [8] Each petitioner alleges that he is a covered participant in the Teamsters Fund; that he received from the Teamsters Fund a "notice to interested parties of the [Teamsters Fund] "together with an "explanation of notice," dated November 21, 1978, which was issued by the Teamsters Fund in compliance with the October 25, 1978, letter from the Brooklyn District Director; and that petitioner and some 10,000 other interested parties of the Teamsters Fund submitted to the Internal Revenue Service comments in response to the notice. The form comment letter submitted by Teamsters Fund participants states as follows: [9]
*163 Dear Sir: Inasmuch as I fall within one of the following described catagories of interested parties, I am an interested party in the New York State Teamsters Conference Pension and Retirement Fund (the "Fund"): (a) An employee eligible to participate under its plan, or (b) A former employee with a vested right to a benefit under its plan, or (c) A beneficiary of a former employee entitled to a benefit under its plan. I am writing to oppose your approval in 1976 of the merger of the Brewery Workers Pension Fund ("Brewery Fund") with our Fund. It is my understanding that the Brewery Fund, will be totaly without assets in a few months, since those assets (which the trustees of our Fund were recently compelled to accept based upon your approval of that merger) are being depleted at a rate in excess of approximately Seven Hundred Thousand ($ 700,000.00) Dollars a month at the present time through payments of benefits to the Brewery people in accordance with the pension plan that the trustees of the Brewery Fund had adopted prior to your approval of such merger. All interested parties in our Fund, including myself, obviously will be badly injured by such a merger unless your approval *164 of that merger is withdrawn; increased contributions by employers to our Fund will obviously be eaten up by these Brewery people, while we may not get any increase in benefits payable to us by our Fund, and such benefits payable to us may even have to be reduced to support these Brewery people whose own employers have contributed and will contribute next to nothing to our Fund. I, thus, cannot understand how such an approval of such a merger was ever granted by you under the Internal Revenue Code in the first place. I believe that the Brewery Fund's pension plan did not meet the requirements for qualification of that plan under the Internal Revenue Code as of the date when the application for approval of the merger was filed with you, and that you, therefore, should never have approved the merger of the Brewery Fund with our Fund. I likewise understand that such application for approval of the merger that was filed with you (which was without notice to me), was not authorized by the trustees of our Fund and was invalidly submitted (also without notice to them) to, and decided by, the Internal Revenue Service. Althought the attorneys for our Fund will address these matters in *165 the papers they have filed and will file with you, I believe my pension rights and my future financial security has been jeopardized by your approval of this merger, and I strongly urge you to withdraw such approval of that merger so as to protect my pension rights. After setting forth the circumstances regarding the merger agreement and the litigation and the proceedings before the Internal Revenue Service that followed, each of the petitions request this Court to make the following declarations and determinations: That the Determination Letter dated September 28, 1976 originally approving the Merger Agreement was illegally issued and is invalid; That the Commissioner's July 15, 1979 determination letter addressed to the Petitioner herein, affirming the issuance of the Determination Letter by the Internal Revenue Service was erroneous; That a partial termination of the Brewery Workers Fund occurred prior to the effective date of the Merger Agreement; That as a result of the partial termination of the Brewery Workers Fund the terminated portion of that plan be deemed to have been spun-off from the Brewery Workers Fund prior to the effective date of the Merger Agreement with *166 the result that those participants of the Brewery Workers Fund who had been terminated from their employment would be deemed to have been fully vested in their accrued benefits to the extent funded as of the date of partial termination; That as a result of such partial termination the Teamsters Fund would not assume any unfunded liabilities for the terminated portion of the Brewery Workers Fund; That since the partial termination of the Brewery Workers Fund resulted in the insolvency of the Brewery Workers Fund (i) the Brewery Workers Fund could no longer systematically provide for the payment of definitely determinable benefits to employees over a period of years and (ii) the Brewery Workers Fund no longer constituted a permanent program, and therefore could not satisfy the requirements for qualification under the Code; That the Commissioner could not approve a merger between a plan which satisfied the requirements for qualification and a plan which did not satisfy the requirements for qualification under the Code; That the Internal Revenue Service should not have issued the September 28, 1976 Determination Letter under circumstances where the merger and consolidation of the *167 Brewery Workers Fund into the Teamsters Fund would result in the eventual insolvency and termination of the Teamsters Fund; That as a result of the partial termination of the Brewery Workers Fund, which was accompanied by the significant reduction in aggregate employer contributions to that fund, the Pension Benefit Guaranty Corporation must: (i) Partition and spin-off the terminated portion of the Brewery Workers Fund, in accordance with Section 4063(d) of ERISA, (ii) In accordance with Treasury Regulation Section 1.411(d)-2(a)(3), allocate the assets of the Brewery Workers Fund as of the date of the partial termination in the order of priority as provided in Section 4044 of ERISA; provided, however, that such allocation will not result in discrimination prohibited by Section 401 (a)(4) of the Code and the regulations thereunder. (iii) Determine if any benefits paid by the Brewery Workers Fund since the date of the partial termination should be subject to recapture as provided in Section 4045 of ERISA, (iv) Exercise its discretion to pay benefits guaranteed by Title IV of ERISA, holding the appropriate employers liable for such guaranteed benefits *168 to the extent permissible under Section 4064 of ERISA, and (v) Impose employer liability under Title IV of ERISA. The Brewery Workers Fund relies upon the following grounds in support of its motions to dismiss for lack of jurisdiction: (1) As to petitioners Wenzel and Wilson, they have not shown that they exhausted their administrative remedies by filing with the Commissioner a comment letter raising all matters they now seek to raise in their petition; [10] (2) all petitioners' claims and allegations concerning a partial termination of the Brewery Workers Fund involve matters not subject to the determination made by the Commissioner, they do not relate to continuing qualification of a plan involving a plan amendment or plan termination within the meaning of section 7476(a), and they relate to operational aspects of the plan and are unrelated to the plan year in the Internal Revenue Service determination. Section 7476(a) confers jurisdiction upon this Court to conduct a review and make a declaration concerning an actual controversy related to the Commissioner's determination with respect to the initial or continuing qualification of a retirement *169 plan, or concerning the Commissioner's failure to make a determination with respect to initial or continuing qualification of the plan. Under section 7476(b)(1) an employee qualifying as a "interested party" is a person who may qualify as a petitioner seeking relief authorized by section 7476(a). However, section 7476 is not a broad grant of jurisdiction to the Tax Court to conduct a review of factual matters related to controversies over retirement plans and to fashion equitable remedies to resolve these controversies. Rather, it grants jurisdiction in relatively narrow circumstances involving, at the very least, an Internal Revenue Service determination that a plan is or is not a qualified one under section 401, or the failure of the Internal Revenue Service to make such a determination after being requested to do so. See Sheppard & Myers, Inc. v. Commissioner,67 T.C. 26 (1976); Thompson v. Commissioner,71 T.C. 32 (1978). The limited jurisdiction of this Court is succinctly described in the legislative history concerning section 7476 as follows: The Tax Court is to have jurisdiction to declare whether a plan is, or is not, a qualified plan *170 * * *. [S. Rept. 93-383 (1973) 1974-3 C.B. (Supp) 80, 193.] Moreover, in reviewing a determination by the Commissioner regarding qualification of a plan, the Court is generally restricted to deciding "whether the Commissioner, in making his determination, properly applied the law to the facts presented in the request for determination." Thompson v. Commissioner,supra at 36-37. Congress "did not expect the Tax Court to conduct a trial de novo to make an independent examination of the facts to determine if the subject plan was qualified." Tamko Asphalt Products, Inc. v. Commissioner,71 T.C. 824, 837 (1979) affd. 658 F2d 735 (10th Cir. 1981). With these principles in mind, we have examined the requests in the petitions regarding the declarations and determinations petitioners asked us to make. In doing so, we have assumed, for purposes of the motions, that all petitioners' comment letters adequately raise the matters which they seek to raise in their petitions. [11]
*171 We have arrived at the firm conclusion that the petitioners do not raise a matter over which we have jurisdiction under section 7476. First, the request that we declare the Commissioner's September 28, 1976, determination letter to be "illegally issued and invalid" is patently beyond the scope of jurisdiction conferred on this Court by section 7476. Certainly the statute itself lends no support to the notion that the Court has broad authorization to conduct a review concerning alleged procedural irregularities in connection with the administrative process relating to a determination, and to set aside a determination as to the qualification of a retirement plan based upon the results of such a review. The statute (section 7476(b)(3)) specifically requires petitioners to participate in the administrative process and "exhaust administrative remedies", and it authorizes the Tax Court to decline to accept review of a Commissioner's determination regarding qualification of a retirement plan unless petitioner establishes that adequate notice of the determination request was given to interested parties. But beyond these specific statutory provisions authorizing inquiry into procedural *172 matters relating to the administrative process, both the statute and the legislative history concerning it are clear that the extent of our jurisdiction under section 7476, in the case of a challenge to a determination made by the Commissioner, is to simply review the reasons provided by the Internal Revenue Service as to the qualification or disqualification of a plan and declare whether the plan is or is not qualified. Thompson v. Commissioner,supra.
Petitioners' alternative request that we declare "erroneous" the Commissioner's letter of July 15, 1979, responding to petitioners' comment letter similarly includes matters beyond the jurisdiction of this Court insofar as it seeks to obtain a review of the circumstances surrounding the issuance of the 1976 determination. Further, the Commissioner's response to the comment of an interested party would not generally constitute a "determination" reviewable by us under section 7476(a). In the case of a petition filed by an interested party, the determination that is generally subject to review is the Commissioner's determination as to the qualification of a retirement plan, issued in response to a request, generally *173 made by the employer or plan administrator, for such determination. Interested parties may challenge the determination, in appropriate circumstances, after submitting comments regarding the question as to whether a determination should be made in accordance with the request. See S. Rept. 93-383, (1973) 1974-3 C.B. (Supp.) 80, 192; Thompson v. Commissioner,supra, and authorities cited therein. Whether the extraordinary circumstances of this case, namely, the lack of notice to Teamsters Fund participants prior to the issuance of the 1976 determination letter, followed by the Commissioner's "reconsideration" of the 1976 determination would provide a basis for treating the 1979 letter as a determination, we need not decide. It is clear that the substantive matters which the petitions request us to review are beyond the scope of our jurisdiction. First, we note that the underlying premise of the request for relief largely concerns the alleged financial inability of the Teamsters Fund to meet the obligations with respect to the former Brewery Workers Fund as a result of brewery plant closings after the date of the merger agreement. As noted previously, *174 these matters were already the subject of extensive litigation, both in the State and Federal courts. Specifically, the New York Federal District Court rejected the Teamsters Fund contention that the alleged financial detriment to the Teamsters Fund participants resulting from the merger provided a basis for setting the merger aside under the ERISA provisions, and the District Court for the District of Columbia likewise concluded that ERISA provides no basis for the Teamsters Fund challenge to the validity and enforceability of the merger agreement. Both District Court decisions were affirmed on appeal. [12] Having been unsuccessful in that litigation, the Teamsters Fund now makes many of the same factual allegations concerning the financial results of the merger, but, rather than base its request for relief upon the notion that the alleged financial detriment to Teamsters Fund participants itself invalidates the merger under ERISA, the Teamsters Fund attempts to cast these issues in the form of requested relief under section 7476(a) by alleging that a "partial termination" of the Brewery Workers Fund occurred prior to the effective date of the merger, and that the partial termination *175 relates to the Commissioner's determination regarding qualification of the merged plans. We conclude that the attempt to use the Code and regulations concept of a partial termination as a vehicle to challenge the validity of the merger in a declaratory judgment suit under section 7476 is clearly without merit. Section 401(a)(7) provides that a pension plan trust shall not constitute a qualified trust unless the plan involved meets the minimum vesting standards of section 411. Section 411(d)(3) provides, in part, that a trust shall not be qualified under section 401(a) unless the plan provides that upon its termination or partial termination, the rights of all affected employees to benefits accrued to the date of termination or partial termination are, to the extent funded, not forfeitable. The applicable treasury regulations concerning partial termination provide, in part, as follows: ( Sec. 1.411(d)-2 (a), Income Tax Regs.) (a) General Rule- (1) Required nonforfeitability. A plan is not a qualified plan (and a trust forming a part of such plan is not a qualified trust) unless the plan provides that -- (i) Upon the termination or partial *176 termination of the plan, * * * the rights of each affected employee to benefits accrued to the date of such termination or partial termination * * * to the extent, funded, or the rights of each employee to the amounts credited to his account at such time, are nonforfeitable * * *. (2) Required allocation (i) A plan is not a qualified plan (and a trust as forming a part of such plan is not a qualified trust) unless the plan provides for the allocation of any previously unallocated funds to the employees covered by the plan upon termination or partial termination of the plan * * * such provision may be incorporated in the plan at its inception or by an amendment made prior to the termination or partial termination of the plan or the discontinuance of contributions thereunder * * *.
(b) Partial termination. (1) General Rule. Whether or not a partial termination of a qualified plan occurs (and the time of such event) shall be determined by the Commissioner with regard to all of the facts and circumstances of a particular case. Such facts and circumstances include: the exclusion, by reason of a plan amendment or severence by the employer, or a group of employees who have previously *177 been covered by the plan; and plan amendments which adversely affect the rights of employees to vest in benefits under the plan. The term "partial termination" as it appears in section 411(d)(3) and the above cited regulations is not further defined. [13] However, a review of the above cited provisions that utilize the term reveals that it at least involves an event or series of events which result in either total exclusion of some employees from coverage by a retirement plan or a reduction in benefits provided for some employees by the plan. Whether the plan continues to qualify when such an event occurs is a matter of applying the applicable provisions of the plan or plan amendment. Whether the event occurs at all is a factual question to be determined in the first instance by the Commissioner. *178 Here, the petitioners do not request that we review a determination made by the Commissioner that applicable provisions of either the Brewery Workers Plan (before the effective date of the merger), or the provisions of the Teamsters Fund plan after the merger, failed to meet the requirements of section 411(d)(3) and provide for vesting of benefits in the event of a partial termination. Rather, petitioners request this Court to make the factual determination that a partial termination occurred, and to further direct that the merged funds should be administered in accordance with this determination. Petitioners' request clearly falls outside the circumstances that were intended by Congress to be the subject of a suit brought pursuant to section 7476, as illustrated by the House Report concerning section 7476, which states in part as follows: [H. Rept. 93-807, supra at 343.] [interested parties] * * * may petition the Tax Court to declare that the plan as constituted does not satisfy the requirements of the tax law designed to protect the employees and their beneficiaries as intended by Congress. For example, a participant under a plan would be entitled to bring an action *179 if he alleges that the vesting provisions under the plan do not satisfy the minimum vesting requirements of the tax law (sec.411), and thus the plan is not entitled to the tax benefits provided for qualified plans unless the plan is amended to satisfy the minimum vesting requirements. Similarly, an action may be brought with regard to the antidiscrimination, participation and coverage, or other requirements of current law, or as added by this Bill. [Emphasis supplied] In an attempt to support their argument that the request for a declaration concerning a partial termination is within the jurisdiction of section 7476, petitioners attached to their brief the pleadings in another declaratory judgment matter before this Court, Tharpe and Brooks, Inc. v. Commissioner, Docket No. 16215-80R. Petitioners correctly point out that the Commissioner in that case recognized that declaratory judgment is appropriate in a matter involving a partial termination of a retirement plan. However, the pleadings in that case disclose that, unlike in these cases, the Commissioner there made a final determination that the retirement plan involved was disqualified under section 401. The Commissioner's *180 determination regarding disqualification was in turn based upon his determination that a partial termination occurred with regard to some plan participants, and that the plan involved did not provide for vesting of benefits in the case of these participants. The petition requests this Court to set aside the Commissioner's final determination as to disqualification of the plan. Such is not the case here. Finally, we note that although he appears to have denied in his answer the Teamsters Fund allegation that a partial termination of the Brewery Workers Fund occurred, the Commissioner later agreed in arguments made in connection with the motions to dismiss these cases that a partial termination did occur. Respondent Brewery Workers Fund disputes this matter. However, the significant matter for purposes of our disposition of these cases is the fact that the issue as to a partial termination and its consequences does not arise in the context of a controversy over whether a retirement plan is qualified or not, as it must in order for there to be jurisdiction under section 7476. Because our conclusions as stated above require dismissal of these cases, we need not and do not pass *181 upon the other arguments made by respondents in support of their positions. Appropriate orders of dismissal will be entered.
Footnotes
1. Cases of the following petitioners are consolidated herewith: James F. Moulthrop, docket no. 13265-79R; and Donald Wilson, docket no. 13332-79R. ↩
2. Since the Commissioner of Internal Revenue, John Hoh, Kenneth Carroll, David Greenhut, Dominic Accetta, Angelo Ferraro, and A. J. Grau are respondents in these consolidated cases, the Commissioner of Internal Revenue will be referred to as Commissioner, and the other respondents, who were trustees of the Brewery Workers Pension Fund, will be referred to collectively as the Brewery Workers Fund.↩
3. Since this is a preliminary jurisdictional motion, the Court has concluded that the post-trial procedures of Rule 182, Tax Court Rules of Practice and Procedure↩, are not applicable in the present circumstances. This conclusion is based on the authority of the "otherwise provided" language of that rule.
4. As subsequently discussed, each of these cases involve substantially the same facts. The jurisdictional issues considered and resolved by the Court are identical as to each petitioner. Accordingly, pursuant to Rule 141, Tax Court Rules of Practice and Procedure↩, the Court has, on its own motion consolidated these cases for purposes of disposing of the motions to dismiss for lack of jurisdiction. 5. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
6. Court proceedings over the merger agreement continued in various courts up through the time that motions in these cases were submitted. In this regard, in early 1977 the Brewery Workers Fund requested the New York State Supreme Court to compel the Teamsters Fund to accept the assets of the Brewery Workers Fund and administer the merged funds pursuant to the merger agreement. This request for relief was granted and the trial court's order was upheld on appeal. Subsequent contempt proceedings resulted in the Teamsters Fund taking over administration of the Brewery Workers Fund (as a separate division of the Teamsters Fund), although motions by the Teamsters Fund to obtain relief from the orders and judgments of the New York State courts continued. In January 1977, individuals who were employees or retired employees covered by the Teamsters Fund brought an action in the United States District Court for the Western District of New York to enjoin the merger of the two funds on the ground that the merger violated the provisions of the Employee Retirement Security Act of 1974 [ERISA] 29 U.S.C. 1001 et seq. This action was dismissed by the District Court in Cicatello v. Brewery Workers Pension Plan,434 F. Supp. 950, (W.D. N.Y. 1977), affd. 578 F.2d 1366 (2nd Cir. 1978). In 1979, the Court of Appeals for the District of Columbia affirmed an unpublished opinion of the United States District Court for the District of Columbia dismissing an action brought by the Teamsters Fund in that court to set aside the merger. New York Teamsters Conference Penion and Retirement Fund v. Pension Benefit Guaranty Corp.591 F.2d 953↩ (D.C. Cir. 1979).
7. An unsigned application Form 5303 was submitted with the letter. The application was thereafter returned by the district director to counsel for the Brewery Workers Fund for signature and it was resubmitted after being signed by the Chairman of the Brewery Workers Fund.↩
8. In addition to these cases, four other actions were brought by individuals alleging an interest in the Teamsters Fund and requesting the Court to make a review of and declaration allegedly concerning the district director's determination of September 28, 1976, the letter of October 25, 1978, and the accompanying technical advice memorandum, and to determine that the Teamsters Fund should be permitted to submit a new request for determination concerning the merger agreement. Another separate action was brought by the Administrator and Trustee of the Teamsters Fund seeking a declaration concerning a request submitted to the Commissioner on behalf of the Teamsters Fund in 1978 for a determination that a partial termination occurred as a result of Brewery plant closings and requesting the Court to determine that a partial termination in fact occurred, as well as certain other relief. The Brewery Workers Fund has filed motions to dismiss each of these cases, and the motions have been disposed of in separate opinions. ↩
9. Respondent Brewery Workers Fund alleges in the motions to dismiss the petitions filed by Mr. Wenzel and Mr. Wilson that these petitioners had not produced evidence that they filed comment letters. Subsequent to the filing of the motions to dismiss and attached to their brief in opposition to the respondents' motions, petitioners Wenzel and Wilson filed copies of documents purporting to be the above "form comment letters" filed by them with the Commissioner. For purposes of these motions, we assume these letters were in fact filed by the petitioners. Regarding petitioner Moulthrop, his petition contains the identical allegations concerning the filing of a comment letter as do the petitions filed by Wenzel and Wilson. However, the comment letter is neither attached to the petition, nor is it otherwise included in the record. The Brewery Workers Fund admits that a comment letter was filed by petitioner Moulthrop, and it does not contend that the comment letter filed by Mr. Moulthrop fails to raise matters raised in the petition, as it does in the case of petitioners Wenzel and Wilson. For purposes of this motion, we assume that Mr. Moulthrop's comment letter raised all matters set forth in his petition.↩
10. See Footnote 9, supra.↩
11. As noted previously, the Brewery Workers Fund disputes that this is the case with regard to petitioners Wilson and Wenzel. We note that the letters submitted by these individuals do not specifically refer to a "partial termination" of the Brewery Workers Fund and the alleged consequences of it, although these matters form the essence of the relief requested in the petitions. However, we need not resolve the issue as to whether these petitioners adequately exhausted their administrative remedies because we conclude that in any event we have no jurisdiction to declare that a partial termination occurred and order the resulting relief requested in the petitions.↩
12. See Footnote 6, supra.↩
13. The scant legislative history concerning section 411(d)(3) sheds little light upon the meaning of the term, other than to indicate it may involve circumstances similar to those presently set forth in the regulations. H. Rept. 93-807 (1974), 1974-3 C.B. (Supp.) 236, 300; S. Rept. 93-383 (1973) 1974-3 C.B. (Supp.) 129. Section 1.401-6(b)(2), Income Tax Regs., which predates ERISA and the enactment of section 411(d)(3) defines the term "termination" (as it formerly appeared in section 401(a)(7)↩) to include "both a partial termination and a complete termination of a plan." The regulation also states that whether a partial termination has occurred is a factual question involving examination of circumstances similar to those now set forth in post-ERISA section 1.411(d)(2)(b).