NEW YORK STATE TEAMSTERS CONFERENCE PENSION AND RETIREMENT FUND, WILLIAM H. MOSLEY, SR., ADMINISTRATOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, AND JOHN HOH, KENNETH CARROLL, DAVID GREENHUT, DOMINIC ACCETTA, ANGELO FERRARO, AND A. J. GRAU, TRUSTEES OF THE BREWERY WORKERS PENSION FUND, Respondent [1]
New York State Teamsters Conference Pension & Retirement Fund v. Commissioner
Docket No. 4144-79R
United States Tax Court
T.C. Memo 1982-593; 1982 Tax Ct. Memo LEXIS 151; 44 T.C.M. (CCH) 1357; T.C.M. (RIA) 82593; 3 Employee Benefits Cas. (BNA) 2210; October 7, 1982. Robert D. Whoriskey, for the petitioner. Cheryl White, for the respondent, Commissioner of Internal Revenue. Bettina B. Plevan and Susan Martin, for the respondents, John Hoh, Kenneth Carroll, David Greenhut, Dominic Accetta, Angelo Ferraro, and A. J. Grau, Former Trustees of the Brewery Workers Pension Fund. DAWSON
MEMORANDUM OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Darrell D. Hallett for ruling on Motions to Dismiss for Lack of Jurisdiction filed by the respondents, John Hoh, Kenneth Carroll, David Greenhut, Dominic Accetta, Angelo Ferraro, and A. J. Grau, Former Trustees of the Brewery Workers Pension Fund. After review of the record we agree *153 with and adopt the Special Trial Judge's opinion which is set forth below. [2]
OPINION OF THE SPECIAL TRIAL JUDGE HALLETT, Special Trial Judge: Petitioner brought this action for declaratory judgment relying for jurisdiction under section 7476. [3] Petitioner brings the action in his capacity as the Administrator and Trustee of the New York State Teamsters Conference Pension and Retirement Fund (Teamsters Fund). By order dated April 18, 1980, the Court granted the motion of the Commissioner to join as additional parties to this action four individuals who are former Trustees of the Brewery Workers Pension Fund. On December 16, 1980, the Brewery Workers Fund filed its motion to dismiss for lack of jurisdiction. All parties filed briefs with regard to the motion and a hearing was held in Washington, D.C. on February 25, 1981, after which the motion was taken under advisement. *154 These proceedings arise out of an agreement entered into in 1973 between the Brewery Workers Fund and the Teamsters Fund which provided for a merger of the Brewery Workers Fund into the Teamsters Fund. Subsequent to the agreement Rheingold Breweries, a large New York Brewery operation and one of the employer-contributors to the Brewery Workers Fund, ceased operations. By letter dated February 12, 1974, counsel for the Teamsters Fund notified counsel for the Brewery Workers Fund that, in view of the Rheingold closing, the Teamsters Fund trustees had voted not to proceed with the merger. Thereafter, the Brewery Workers Fund brought suit in the New York State Supreme Court for specific performance of the 1973 agreement. On April 29, 1975, the New York Supreme Court granted the Brewery Workers Fund summary judgment and directed the Teamsters Fund to specifically perform the contract. The trial court's opinion and order was affirmed on appeal in Brewery Workers Pension Fund v. New York State Teamsters Conference Pension and Retirement Fund,49 App. Div. 2d 755, 374 N.Y.S. 2d 590 (2d Dept. 1975). *155 Leave to appeal was denied by the appellate division on November 18, 1975, and by the Court of Appeals on February 11, 1976, 38 N.Y. 2d 709, 382 N.Y.S. 2d 1028 (1976). [4]
*156 The 1973 agreement provided that it was conditioned upon the Commissioner's approval of the qualification of the merged funds for Federal tax purposes. In connection with the proceedings before the New York State courts regarding the enforce-ability of the merger agreement, the Teamsters Fund was ordered to "cooperate in the preparation and submission of the application to the Internal Revenue Service and to furnish the information requested by the actuary." By letter dated March 8, 1976, counsel for the Brewery Workers Fund submitted to the District Director, Internal Revenue Service, Buffalo, New York, a request for a determination that the "qualified and exempt status of the [Teamsters Fund] will not be affected by a merger of a local, multi-employer negotiated pension fund into the [Teamsters Fund] and that the merger of the two Funds meets the requirements of the Employee Retirement Income Security Act [Pub. L. 93-406, 88 Stat. 995, hereinafter ERISA] in that the Brewery Workers Pension Fund will not 'terminate' as a result of the merger." [5]
*157 The Brewery Workers Fund contends that the Teamsters Fund was notified of the filing of the determination request with the district director shortly after the request was made, and that efforts previously had been made by the Brewery Workers Fund to obtain the cooperation of the Teamsters Fund in making the determination request. The Teamsters Fund denies that it had notice of the request until after the Internal Revenue Service made a determination in response to it. By letter dated September 28, 1976, the Buffalo District Director responded to the ruling request and concluded that "Based on the information supplied, we have made a favorable determination on your application identified above." In a letter dated November 19, 1976, to the Buffalo District Director, the Teamsters Fund stated that it first received the district director's letter of September 28, 1976, on November 10, 1976, and that it "never filed an application for such approval nor did [it] join with any other party in filing an application." The Teamsters Fund requested that the determination letter of September 28, 1976, be revoked. The matter was thereafter referred to the key district director in Brooklyn, *158 New York. The Brooklyn District Director's office then requested technical advice from the National Office, Internal Revenue Service, on the following questions: (1) Whether interested parties received sufficient notice of the Brewery Workers Fund's determination letter application to satisfy the notice requirements of applicable provisions of the Treasury regulations; (2) whether the absence of this notice should result in the withdrawal of the determination letter approving the merger of the Brewery Workers Fund with the Teamsters Fund. Various conferences were then held in the National Office and were attended by officials of the Internal Revenue Service and the two funds. Subsequently, a technical advice memorandum was issued by the National Office concluding that; (1) Under the applicable provisions of ERISA and the Treasury Regulations, participants in the Teamsters Fund were "interested parties" and should have received notice of the ruling request that resulted in the determination letter of September 28, 1976: (2) the interested parties involved should be given notice, but the determination letter should not be withdrawn during the period within which the interested parties *159 were to be afforded the opportunity to comment on the determination. The following letter dated October 25, 1978, was sent by the Chief of the Employee Plans-Exempt Organization Division of the Brooklyn District Director's Office to counsel for the Teamsters Fund: The enclosed Technical Advice copy is being sent to you in accordance with your telephone request of October 10, 1978. You will note that with respect to Issue (1) the Technical Advice concludes that interested parties of the Teamsters Fund were not given proper notice of the determination letter application. With respect to Issue (2) the Technical Advice concludes that interested parties not previously given notice should now be given notice. Please furnish this office with evidence that proper notice has been given to all interested parties within 30 days of the date of this letter. After receipt of the October 25, 1978 letter, the Teamsters Fund sent notices to its members of the March 8, 1976, request for determination, purportedly in compliance with the technical advice memorandum. By letter dated September 11, 1978, a request for determination was submitted on behalf of "New York State Teamsters Conference *160 Pension and Retirement Fund, Acting in this Matter as Successor in Interest to the Brewery Workers Pension Fund." This request outlined the facts and circumstances concerning the merger agreement and the ensuing litigation in the courts and the proceedings before the Internal Revenue Service related to it. In addition, the request noted that by order and judgment entered on April 12, 1977, by the New York State Supreme Court, it was declared that "the Brewery Workers Fund and the Teamsters Fund had been fully intergrated since December 1, 1976." The request further stated that by September 30, 1976, in addition to the closing of the Rheingold Breweries, other New York brewery operations which had been contributors to and participants in the Brewery Workers Fund had shut down plants in New York and discharged employees. The ruling asserted that the merger agreement, if it became effective at all, became effective no earlier than December 1, 1976. The district director was requested to rule that, before the effective date of the merger agreement, and no later than September 30, 1976, "a partial termination of the Brewery Workers Fund had occurred within the meaning of [section 411(d)(3) *161 and Sec.1.411(d)-2(b), Income Tax Regs.] In support of this requested determination, the letter set forth the assertion that the closings of the various breweries and the discharge of employees and former active participants in the Brewery Workers Fund amounted to a partial termination within the meaning of the applicable Code and regulation sections. Notices of the filing of the September 11, 1978 determination request were issued by petitioner to current participants, former participants with vested benefits, and beneficiaries of deceased former participants receiving benefits in the former Brewery Workers Fund. These notices stated in part that an application would be submitted to the district director for a determination that: [T]he brewery closings in New York City and the resulting discharge of significant numbers of participants in the Brewery Workers Pension Fund caused a partial termination of the Brewery Workers Pension Fund by September 30, 1976, and therefore the benefits of those discharged participants became nonforfeitable and the assets of the Brewery Worker's Pension Fund, to the extent available as of the date of the partial *162 termination, should be allocated among all present active participants, those discharged participants, and present pensioners to permit the Brewery Workers Fund Division to continue to qualify under [the Code]. By letter dated October 25, 1978 (separate from the October 25, 1978 letter referred to above which enclosed the National Office technical advice memorandum), the key district director in Brooklyn returned petitioner's application and request of September 11, 1978, and stated in part "please furnish this office with evidence that proper notice has been given to all interested parties in accordance with the Technical Advice copy furnished to your representative on 10/25/78 * * *." Petitioner responded by letter dated November 21, 1978 returning the determination request of September 11, 1978. In that letter, petitioner contended that the conclusion stated in the National Office technical advice memorandum that interested parties of the Teamsters Fund were not given proper notice of the determination letter application referred only to the application of March 1976, and not to the determination request made by petitioner on September 11, 1978. Petitioner maintained that *163 the only "interested parties" involved and entitled to notice of the September 1978 request were persons associated with the Brewery Workers Fund. By letter dated December 26, 1978, the Brooklyn district director's office acknowledged receipt of petitioner's letter of November 21, 1978, and stated as follows: Your submission is being returned to you again since it is our position that all interested parties have not been notified consistent with a position expressed by our National Office in its Technical Advice dated September 29, 1978. We cannot hold in abeyance the processing of your application pending disposition of the court proceedings. However, you may want to withhold your resubmission until the court proceedings have been finalized. The petition in this case was filed on March 29, 1979. [6] The petition in this case requests that the Court determine the following. *164 The Commissioner's December 26, 1978 determination letter * * * is invalid; and, That either a partial termination of the Brewery Workers Fund had occurred, as set forth in the Application for Partial Termination, or that a partial termination of the Brewery Workers Fund had occurred, without regard to the Application for Partial Termination; and, That the terminated portion of the Brewery Workers Fund be deemed to have been spun off from the Brewery Workers Fund prior to the effective date of the Merger Agreement with the result that those participants of the Brewery Workers Fund who had been terminated from their employment would be deemed to have been fully vested in their accrued benefits to the extent funded as of the date of the partial termination. * * * On May 29, 1979, the Commissioner filed a motion to dismiss for lack of jurisdiction. His motion was based upon the contention that petitioner's failure to give notice of the request and application of September 11, 1978, to individuals who were covered by the Teamsters Fund, both before and after the effective date of the merger constituted a failure to exchaust administrative remedies. By order dated July 11, 1979, this *165 Court denied the Commissioner's motion to dismiss on the grounds that sufficient notice of the September 11, 1978, determination request was made. The Brewery Workers Fund contends this action should be dismissed for lack of jurisdiction for the following reasons: (1) The district director's letter of December 26, 1978, is not a "determination" within the meaning of section 7476 or, in the alternative, to the extent it constitutes a determination, it is not a determination concerning the initial or continuing qualification of a plan; (2) even if the December 26, 1978, letter did constitute an otherwise reviewable determination, the petitioner did not exhaust his administrative remedies concerning that determination because he did not appeal the district director's decision to the appeals office, nor seek technical advice regarding it, nor did he give notice to interested parties of the Teamsters Fund; (3) with respect to the allegations and request for relief in the petition regarding this Court's determination of a partial termination and the results thereof, these matters do not relate to the continuing qualification of a plan involving a plan amendment or plan termination within *166 the meaning of section 7476; (4) petitioner failed to give notice to interested parties and provide opportunity for interested parties and the Secretary of Labor to comment on these matters; and (5) the Commissioner has not made a determination with respect to these matters, nor has there been a failure to make a determination within the meaning of section 7476 regarding them. Further, the motion alleges that the petition raises matters not considered by the Commissioner and used as a basis for his determination, and matters which involve operational aspects of the plan. Section 7476(a) confers jurisdiction on this Court to make a declaration in the case of an actual controversy concerning the Commissioner's determination with respect to the initial or continuing qualification of a retirement plan, or concerning a controversy over the Commissioner's failure to make a determination concerning initial or continuing qualification (providing the controversy arises from a plan amendment or termination). This case clearly does not involve a controversy over initial qualification; thus, if jurisdiction *167 is to be found, it must be based upon either a determination regarding continuing qualification or on the Commissioner's failure to make a determination regarding continuing qualification. We agree with respondents that the December 26, 1978 letter does not constitute a determination with respect to continuing qualification upon which jurisdiction can be based under section 7476(a). Not every determination concerning a retirement plan amounts to a "determination" for purposes of section 7476(a). Rather, the term has "specific technical meaning." Shut Out Dee-Fence, Inc. v. Commissioner,77 T.C. 1197 (1981). The term is defined in section 601.201(a)(3), Statement of Procedural Rules (hereinafter Procedural Rules) as a "written statement issued by a district director in response to a written inquiry by an individual or an organization * * *." More specifically, section 601.201(o)(2), Procedural Rules, gives authority to district directors of so-called "key district offices" to issues determination letters concerning retirement plans. The district director's ultimate response *168 to a ruling request concerning a retirement plan is defined as a "notice of final determination" in section 601.201(o)(9), Procedural Rules. Under this section, a notice of final determination regarding a retirement plan is a letter which either states that the applicant's plan satisfies the qualification requirements of [the Code] or which states "the applicant's plan fails to satisfy the qualification requirements of the Code." The plain meaning of section 7476(a), in light of the procedural rules relating to determinations covered by it, leaves us with no doubt that, contrary to petitioner's assertions, the district director's letter does not constitute a determination that is reviewable by this Court. The letter does not set forth a conclusion as to whether or not the Brewery Workers Fund meets the qualification requirements of the Code. Rather, it only states that notice of petitioner's request was not given to interested parties, and, for that reason, no further consideration of the request would be made. We agree with petitioner that when the district director took this position, he and the petitioner "locked horns" on the issue as to whether notice to persons associated *169 with the Teamsters Fund, but not with the Brewery Workers Fund prior to the effective date of the merger, was required. Further, given petitioner's position that such notice was not required and would not be given, the parties as a practical matter were at a stalemate insofar as resolving any of the other issues proposed by the petitioner. But while petitioner relies upon these circumstances in support of his argument that the Commissioner had taken a final position on what petitioner characterizes as a "substantive issue of law" adverse to petitioner's position, he simply overlooks the language of the statute providing that jurisdiction of this Court for declaratory judgment purposes is to be based upon a determination concerning the continuing qualification of a plan. The letter which petitioner argues reflects the Commissioner's determination plainly states that the district director expressly declined to reach a determination on any matter other than the issue as to whether adequate notice to interested parties had been given. Whether the issue as to notice is labeled "procedural" or "substantive", and even assuming that it addressed itself to the fundamental question posed *170 by petitioner regarding whether the issue of partial termination could be viewed retroactively in light of the circumstances existing prior to the effective date of the merger, the plain fact is that the Commissioner did not purport to reach a final conclusion regarding the continuing qualification of a plan. Petitioner argues in the alternative that if the December 26, 1978 letter does not amount to a determination upon which jurisdiction can be based, then the circumstances involved regarding petitioner's request that the Commissioner review matters occurring prior to the effective date of the merger establish that the Commissioner has failed to make a determination within the meaning of section 7476(a)(2). We agree with the position of the Commissioner on this issue that the December 26, 1978 letter amounted to "notice of respondent Commissioner's deliberate failure to make a determination." But the mere failure to make a determination regarding a retirement plan does not in itself establish jurisdiction for declaratory judgment purposes. Assuming that the requirements of section 7476(a) *171 regarding the failure of the Commissioner to make a determination are otherwise met, petitioner must nevertheless meet the requirements of section 7476(b)(3). That section provides that "The Tax Court shall not issue a declaratory judgment or decree under this section or in any proceeding unless it determines that the petitioner has exhausted administrative remedies available to him within the Internal Revenue Service," and that "A petitioner shall not be deemed to have exhausted his administrative remedies with respect to a failure by the Secretary to make a determination with respect to initial qualification or continuing qualification of a retirement plan before the expiration of 270 days after the request for such determination was made." While we have previously held that even the passage of 270 days does not automatically establish that the exhaustion of administrative remedies requirement has been satisfied, Prince Corporation v. Commissioner,67 T.C. 318, 326 (1976), the statute is clear on its face requiring that the Commissioner must be given a minimum of 270 days to act on a request before the jurisdiction of this Court can be invoked. See, Gladstone Foundation v. Commissioner,77 T.C. 221 (1981). *172 There is simply no basis for overlooking the minimum time requirement even where, as here, it is clear that before expiration of the 270-day period the Commissioner unequivocably stated his position that there would be no further consideration of the matters raised in petitioner's request until what the Commissioner viewed as required notice to interested parties had been accomplished. The document which petitioner contends was an application for determination with respect to which the Commissioner failed to make a determination was submitted by petitioner to the Commissioner no earlier than September 11, 1978. Accordingly, the filing of this action on March 29, 1979, was far short of the expiration of 270 days from the earliest date that an application could be considered as having been submitted. [7] Petitioner attempts to avoid this conclusion by asserting "petitioner's administrative remedies were exhausted without regard to the application because the petition was filed on March 29, 1979 over 270 days after the Commissioner was formally notified on April 28, 1978 of the partial termination of the Brewery Fund." Petitioner's attempt to utilize the April 28, 1978 communication *173 from the Teamsters Fund to the Commissioner as a basis with respect to which to calculate the 270-day period required by section 7476(b)(3) is without merit. *174 The communication petitioner relies upon in this regard was sent to the National Office by the Teamsters Fund counsel after the Teamsters Fund had been advised by the Brooklyn District Director's Office that it intended to seek technical advice from the Internal Revenue Service, National Office, on the question (raised by the Teamsters Fund) as to whether the September 28, 1976 favorable determination letter should be revoked. The April 28 letter begins by stating: * * * we have requested the opportunity to submit this letter to you because we believe that additional matters should be considered by your office in furnishing technical advice to the district director's office. The letter then set forth "procedural matters" relating to the submission of the March 1976 application submitted to the district director by the Brewery Workers Fund counsel and it follows with a discussion of "substantive issues," including matters concerning the closing of the Brewery Workers Fund employer plants and whether these closings brought about a "partial termination" of the Brewery Workers Fund plan. The letter concluded with the request that the National Office determine that "the September 28, 1976 determination *175 letter was issued in error and should be withdrawn in order to allow the Teamsters Fund trustees to participate in the new application for an Internal Revenue Service determination, making a full disclosure of all the facts, and affording an opportunity to completely review the relevant law." As the above quoted letter clearly shows on its face, although the Teamsters Fund contended in the letter that a partial termination of the Brewery Workers Fund had occurred before the effective date of the merger, the contention was made in the context of a submission to the National Office in connection with its consideration of the Teamsters Fund request that the September 28, 1976 determination be revoked. The proceedings which began with that request resulted in the October 25, 1978 communication to the Teamsters Fund by the Brooklyn District Director's office transmitting the National Office conclusion that the September 28, 1976 determination would not be withdrawn. Petitioner himself has recognized the separate nature of those proceedings from the instant proceeding (which has its genesis in petitioner's application of September 11, 1978) in that petitioner and others associated with *176 the Teamsters Fund have brought wholly separate suits for declaratory judgment attempting to challenge the National Office and district director's decision regarding withdrawal of the 1976 determination. [8] Accordingly, the April 28 letter submitting information and argument in connection with National Office consideration of technical advice requested by the district director clearly did not constitute a request for determination by petitioner which may form the basis for jurisdiction over this suit under section 7476(b)(3). Central to satisfaction of the requirement of section 7476(b)(3) regarding exhaustion of administrative remedies is the submission of an application or request for determination in the first instance. [9] The procedural rules (section 601.201(o)) in particular make it clear that a "request" is a formal written document submitted to the district director requesting a final determination as to the qualification of a pension plan. Petitioner's "notice" to the National Office regarding his position as to the partial termination of the *177 Brewery Workers Fund was neither submitted to the district director nor did it request a final determination as to the qualification of the plan. [10]
*178 The petition appears to request that, even if the application for partial termination submitted by petitioner to the Commissioner on September 11, 1978, did not lead to a reviewable determination or to a failure to make a determination within the meaning of section 7476(a), we nevertheless should make a determination that a partial termination of the Brewery Workers Fund in fact occurred. In this respect, petitioner argues on brief that the Commissioner had the "responsibility" to review all the facts and circumstances and determine whether a partial termination occurred and that the Court should "make a declaration that the Commissioner's actions with respect to the application of [s]ection 411(d)(3) and the regulations thereunder were incorrect." There is simply no such sweeping authority vested in this Court to make declarations concerning requirement plans. Section 7476 is not a broad grant of jurisdiction to the Tax Court to conduct a review of factual matters related to controversies over retirement plans and to fashion equitable remedies to resolve these controversies. Rather, section 7476 grants jurisdiction in only narrowly defined circumstances. See Sheppard & Myers, Inc. v. Commissioner,67 T.C. 26 (1976); *179 Thompson v. Commissioner,71 T.C. 32 (1978). At the very least, the statute requires either a determination or a failure to make a determination with respect to initial or continuing qualification of a retirement plan and it gives the Court jurisdiction to make a declaration concerning the initial or continuing qualification of a retirement plan where there has either been a request followed by an adverse determination, or a failure to make a determination where there has been a request. [11] The limited jurisdiction of this Court is succinctly described in the legislative history concerning section 7476 as follows: The Tax Court is to have jurisdiction to declare whether a plan is, or is not, a qualified plan, * * *. [S. Rept. 93-383 (1973) 1974-3 C.B. (Supp.) 80, 193] Moreover, we have no jurisdiction over operational defects in the plan; rather, we are restricted to deciding *180 "whether the Commissioner, in making his determination, properly applied the law to the facts presented to him in the request for such determination." Thompson v. Commissioner,supra at 37. It is clear that the atters raised in the petition concerning partial termination are beyond the scope of our jurisdiction. First, we note that the underlying premise of the requests for relief largely concern the alleged financial inability of the Teamsters Fund to meet the obligations with respect to the former Brewery Workers Fund as a result of brewery plant closings after the date of the merger agreement. As noted previously, these matters were already the subject of extensive litigation, both in the state and Federal courts. Specifically, the New York Federal District Court rejected the Teamsters Fund contention that the alleged financial detriment to the Teamsters Fund participants resulting from the merger provided a basis for setting the merger aside under the ERISA provisions, and the District Court for the District of Columbia likewise concluded that ERISA provides no basis for the Teamsters Fund challenge to the validity and enforceability of the merger agreement. *181 Both District Court decisions were affirmed on appeal. [12] Having been unsuccessful in that litigation, the Teamsters Fund now makes many of the same factual allegations concerning the financial results of the merger, but, rather than base its request for relief upon the notion that the alleged financial detriment to Teamsters Fund participants itself invalidates the erger under ERISA, the Teamsters Fund attempts to cast these issues in the form of requested relief under section 7476(a) by alleging that a "partial termination" of the Brewery Workers Fund occurred prior to the effective date of the merger, and that the partial termination relates to the Commissioner's determination regarding qualification of the merged plans. We conclude that the attempt to use the Code and regulations concept of a partial termination as a vehicle to challenge the validity of the merger in a declaratory judgment suit under section 7476 is clearly without merit. On brief, petitioner attempts to cast the requested relief in the petition within the context of a determination concerning the qualification of the Brewery Workers Fund by noting that the September 11, 1978 request *182 by the Teamsters Fund not only asked the Commissioner to determine that a partial termination of the Brewery Workers Fund occurred, but that "only the remaining portion of the Brewery Workers Fund continued to qualify under [section] 401(a) of the Code and was eligible to be merged into and with the Teamsters Fund." This reference in the application of September 11 to qualification of the plan cannot serve to bring petitioner within the scope of section 7476. A brief discussion of the Code and regulation provisions relating to plan terminations and partial terminations will point out that the issues petitioner seek to raise regarding these matters do not, in the final analysis, relate to the Commissioner's determination, or failure to make a determination, concerning initial or continuing qualification of a plan within the meaning of section 7476. Section 401(a)(7) provides that a pension plan trust shall not constitute a qualified trust unless the plan involved meets the minimum vesting standards of section 411. Section 411(d)(3) provides, in part, that a trust shall not be qualified under section 401(a) unless the plan provides that upon its termination or partial termination, *183 the rights of all affected employees to benefits accrued to the date of termination or partial termination are, to the extent funded, not forfeitable. The applicable treasury regulations concerning partial termination provide, in part, as follows: ( Sec. 1.411(d)-2(a), Income Tax Regs.) (a) General Rule - (1) Required nonforfeitability. A plan is not a qualified plan (and a trust forming a part of such plan is not a qualified trust) unless the plan provides that -- (i) Upon the termination or partial termination of the plan, * * * the rights of each affected employee to benefits accrued to the date of such termination or partial termination * * * to the extent funded, or the rights of each employee to the amounts credited to his account at such time, are nonforfeitable * * *. (2) Required allocation. (i) A plan is not a qualified plan (and a trust forming a part of such plan is not a qualified trust) unless the plan provides for the allocation of any previously unallocated funds to the employees covered by the plan upon termination or partial termination of the plan * * * Such provision may be incorporated in the plan at its inception *184 or by an amendment made prior to the termination or partial termination of the plan or the discontinuance of contributions thereunder * * *. (b) Partial Termination. (1) General rule. Whether or not a partial termination of a qualified plan occurs (and the time of such event) shall be determined by the Commissioner with regard to all of the facts and circumstances in a particular case.Such facts and circumstances include: the exclusion, by reason of a plan amendment or severence by the employer, of a group of employees who have previously been covered by the plan; and plan amendments which adversely affect the rights of employees to vest in benefits under the plan. The term "partial termination" as it appears in section 411(d)(3) and the above cited regulations is not further defined. [13] However, a review of the above cited provisions that utilize the term reveals that it at least involves an event or series of events which result in either total exclusion of some employees from coverage by a retirement plan or a reduction in benefits provided for some employees by the plan. Whether the plan continues to qualify when such an event occurs is a matter of applying the *185 applicable provisions of the plan or plan amendment. Whether the event occurs at all is a factual question to be determined in the first instance by the Commissioner. Here, although petitioner in the determination request alludes to the matter of "only the remaining portion of the Brewery Workers Fund continue[ing] to qualify under section 401(a)," the *186 essence of petitioner's request is for a factual determination that a partial termination occurred, and for a direction as to how the merged funds should be administered in light of the partial termination. Petitioner did not ask the Commissioner, nor does he ask this Court, to determine whether the provisions of the Brewery Workers Fund plan or any amendment thereto adequately provides for vesting of benefits of employees affected by a partial termination. Accordingly, the relief requested by petitioner does not involve a controversy over either the Commissioner's determination or failure to make a determination with respect to the continuing qualification of a plan within the meaning of section 7476. In an attempt to support his argument that the request for a declaration concerning a partial termination is within te jurisdiction of section 7476, petitioner attached to his brief the pleadings on another declaratory judgment matter before this Court. Tharpe and Brooks, Incorporated v. Commissioner, Docket No. 16216-80R. Petitioner correctly points out that the Commissioner in that case recognized that declaratory judgment is appropriate in a matter involving a partial termination *187 of a retirement plan. However, the pleadings in that cas disclose that, unlike in this case, the Commissioner there made a final determination that the retirement plan involved was disqualified under secton 401. The Commissioner's determination regarding disqualification was in turn based upon his determination that a partial termination occurred with regard to some plan participants, and that the plan involved did not provide for vesting or benefits in the case of these participants. The petition requests this Court to set aside the Commissioner's final determination as to disqualification of the plan. Such is not the case here. Finally, we note that although he appears to have denied in his answer the Teamsters Fund allegation that a partial termination of the Brewery Workers Fund occurred, respondent later agreed in arguments made in connection with the motions to dismiss this and the other related cases that a partial termination did occur. Respondent Brewery Workers Fund disputes this matter. However, the significant matter for purposes of our disposition of this case is the fact that the issue as to a partial termination and its consequences does not arise in the context *188 of a controversy over whether a retirement plan is qualified or not, as it must in order for there to be jurisdiction under section 7476. Because our conclusions stated above require dismissal of this case, we need not and do not pass upon the other arguments made by respondents in support of their position.
An appropriate order of dismissal will be entered.
Footnotes
1. Since the Commissioner of Internal Revenue, John Hoh, Kenneth Carroll, David Greenhut, Dominic Accetta, Angelo Ferraro, and A. J. Grau are respondents in this case, the Commissioner of Internal Revenue will be referred to as Commissioner, and the other respondents who are trustees of the Brewery Workers Pension Fund, will be referred to collectively as the Brewery Workers Fund.↩
2. Since this is a preliminary jurisdictional motion, the Court has concluded that the post-trial procedures of Rule 182, Tax Court Rules of Practice and Procedure↩, are not applicable in the present circumstances. This conclusion is based on the authority of the "otherwise provided" language of that rule.
3. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise provided.↩
4. Court proceedings over the merger agreement continued in various courts up through the time that motions in these cases were submitted. In this regard, in early 1977 the Brewery Workers Fund requested the New York State Supreme Court to compel the Teamsters Fund to accept the assets of the Brewery Workers Fund and administer the merged funds pursuant to the merger agreement. This request for relief was granted and the trial court's order was upheld on appeal. Subsequent contempt proceedings resulted in the Teamsters Fund taking over administration of the Brewery Workers Fund (as a separate division of the Teamsters Fund), although motions by the Teamsters Fund to obtain relief from the orders and judgments of the New York State courts continued. In January 1977, individuals who were employees or retired employees covered by the Teamsters Fund brought an action in the United States District Court for the Western District of New York to enjoin the merger of the two funds on the ground that the merger violated the provisions of the Employee Retirement Security Act of 1974 [ERISA] 29 U.S.C. 1001 et seq. This action was dismissed by the District Court in Cicatello v. Brewery Workers Pension Plan,434 F.Supp. 950, (W.D. N.Y. 1977), affd. 578 F.2d 1366 (2nd Cir. 1978). In 1979, the Court of Appeals for the District of Columbia affirmed an unpublished opinion of the United States District Court for the District of Columbia dismissing an action brought by the Teamsters Fund in that court to set aside the merger. New York Teamsters Conference and Retirement Fund v. Pension Benefit Guaranty Corp.591 F.2d 953↩ (D.C. Cir. 1979).
5. An unsigned application Form 5303 was submitted with the letter. The application was thereafter returned by the district director to counsel for the Brewery Workers Fund for signature and it was resubmitted after being signed by the Chairman of the Brewery Workers Fund.↩
6. In addition to filing this case, on January 25, 1979, petitioner and three individuals covered by the Teamsters Plan brought four separate actions requesting the Court to make a review of and declaration allegedly concerning the district director's determination of September 28, 1976, the letter of October 25, 1978, and the accompanying technical advice memorandum, and to determine that the Teamsters Fund should be permitted to submit a new request for determination concerning the merger agreement. On September 14, 1979, three more actions were instituted by individuals who allege they are covered participants in the Teamsters Fund and made comments to the Commissioner after receiving notice in 1978 concerning the March 1976 determination request. These petitions seek to have this Court set aside the 1976 determination letter and declare that a partial termination of the Brewery Workers Fund occurred and afford other relief allegedly related to these declarations.↩
7. On brief, the Brewery Workers Fund notes that when the district director first returned petitioner's application on October 25, 1978, because proper notice had not been given to interested parties, he further stated that the 270-day period provided by section 7476↩ would not begin to run until "we receive your complete and correct application." This is in accordance with section 601.201(o)(3)(i), Procedural Rules, which provides that if any of the requirements for a completed application have not been met, including the requirement of notice to interested parties, the district director has the discretion to return the application and require that it be resubmitted, and until it is resubmitted the 270-day period does not begin to run. Petitioner's brief points out that if the district director's position were sustained in this regard, then "the Commissioner * * * can effectively avoid issuing a ruling since the 270 day period will not begin to run until Petitioner has in substance conceded its legal position by giving the type of notice demanded by the petitioner." We need not resolve this question, since, as stated above, even assuming an adequate request for determination was submitted by petitioner on September 11, 1978, the petition was filed far short of 270 days after that date.
8. See Footnote 6, supra.↩
9. See also in this regard Gladstone Foundation v. Commissioner,77 T.C. 221 (1981), where we held in connection with the requirement of section 7428 pertaining to exhaustion of administrative remedies by an exempt organization seeking a declaratory judgment that similar statutory language and procedural rules require that "to exhaust its administrative remedies, an organization must first file an application for exemption or request for a determination of the foundation's status, complete all requests for additional information, and complete the protest and appeals procedures." [77 T.C. 221↩ (1981)]
10. In reaching our conclusion that jurisdiction may not be predicated upon the Commissioner's failure to make a determination because the suit was brought less than 270 days after the request which petitioner contends the Commissioner failed to rule upon was made, we have considered the position taken by the Commissioner that "the Court has previously ruled that the petitioner had exhausted his administrative remedies as a prerequisite for jurisdiction under [section] 7476(b)(3)." In this regard, as noted above, the Commissioner filed a motion to dismiss this case for lack of jurisdiction and after a hearing on the motion the Court entered an order denying the Commissioner's motion on ruling 11, 1979. However, a close reading of the motion and the Court's ruling upon it demonstrates that the issue we address here, namely, the failure to comply with the 270-day requirement of section 7476(b)(3) was not previously considered by the Court. The Commissioner's motion to dismiss for lack of jurisdiction outlined the circumstances leading up to the institution of this suit, and, in particular, asserted that "all interested parties in the merged Fund are entitled to notice with respect to an application for determination regarding the partial termination of the Brewery Workers Fund and the consequences thereof," and that therefore, the Commissioner's refusal to rule on petitioner's application for partial termination until all interested parties were given notice was appropriate. The motion concluded with the statement that petitioner refused to notify all interested parties after the Commissioner elected to return the application for his failure to do so, and that "in light of petitioner's refusal, it is respondent's position that petitioner has failed to exhaust his administrative remedies within the Service as required by [section] 7476(b)(3)." After argument on the motion, the Court concluded "I'm going to rule that your Part III is well taken, and that you have given sufficient notice, as required by the statute, and that the motion to dismiss will be denied." The Court's reference to "Part III" in its ruling was to "point III" of the Brief for Petitioner in Opposition to Respondent's Motion to Dismiss where petitioner argued that legally sufficient notice to interested parties had been provided in connection with the application for determination that there had been a partial termination of the Brewery Workers Fund. The question as to whether the 270-day requirement of section 7476(b)(3)↩ has been satisfied was neither argued to nor considered by us in connection with the Commissioner's Motion to Dismiss for Lack of Jurisdiction.
11. In addition, the statute now specifically provides that there is jurisdiction when the Commissioner makes a revocation of qualification. In this regard, the statute provides that a revocation is considered to be a determination for purposes of section 7476(a)↩.
12. See Footnote 4, supra.↩
13. The scant legislative history concerning section 411(d)(3) sheds little light upon the meaning of the term, other than to indicate it may involve circumstances similar to those presently set forth in the regulations. H. Rept. 93-807 (1974), 1974-3 C.B. (Supp) 236, 300; S. Rept. 93-383 (1973) 1974-3 C.B. (Supp) 129. Section 1.401-6(b)(2), Income Tax Regs., which predates ERISA and the enactment of section 411(d)(3)↩ defines the term "termination" (as it formerly appeared in section 401(a)(7) to include "both a partial termination and a complete termination of a plan." The regulation also states that whether a partial termination has occurred is a factual question involving examination of circumstances similar to those now set forth inpost-ERISA section 1.411(d)(2)(b).